PRIMERICA *v.* PLANNING AND ZONING COMMISSION OF THE TOWN OF GREENWICH
(13543)
(13544)

PETERS, C. J., HEALEY, SHEA, GLASS and SANTANIELLO, Js.

Argued January 11—decision released May 2, 1989

*W. Patrick Ryan,* with whom were *Michael T. Ryan,* and, on the brief, *Charles A. Deluca,* for the appellant

in the first case and the appellee-cross appellant in the second case (plaintiff).

*Hugh D. Fyfe,* with whom were *Richard G. Monaco* and, on the brief, *Marie J. McIntyre,* for the appellee in the first case and the appellant-cross appellee in the second case (defendant).

SHEA, J. These appeals involve the zoning regulations for a tract of land in the town of Greenwich that permit its use for business executive offices by a single occupant. In the first case, the plaintiff, Primerica, then the American Can Company, brought an administrative appeal to the Superior Court after the defendant, the Greenwich planning and zoning commission (commission), denied its petition to amend the town's zoning regulations by deleting the single executive occupancy limitation in the town's "BEX-50" zone. The trial court dismissed the plaintiff's appeal, finding that the commission's decision not to amend the regulations was neither arbitrary nor confiscatory. In the second case, the plaintiff challenged subsequent amendments to the zoning regulations that increased the occupancy limitation but reduced the permitted employee density. The trial court, in sustaining the plaintiff's appeal, concluded that the commission had acted arbitrarily in the way that it amended the zoning regulations. These appeals followed.

In the first appeal, the plaintiff claims that the trial court erred in finding that the commission's decision not to delete the single occupancy limitation was neither arbitrary nor confiscatory. In the second appeal, the commission claims that the trial court erred in concluding that: (1) the plaintiff, as a lessee, was aggrieved by the commission's decisions; and (2) the commission acted arbitrarily in the way that it amended the zoning regulations. In its cross appeal in the second case, the plaintiff claims that the trial court erred in conclud-

ing that the plaintiff did not have standing as an owner of property in New York that abutted the subject property in Connecticut. We find no error in both appeals, and we decline consideration of the issue raised in the plaintiff's cross appeal.

The following facts are relevant to these appeals. In 1967, the construction of interstate route 87, now I-684, isolated a 228 acre triangular parcel of land in the northwest corner of Greenwich from the remainder of the town. At that time, the parcel was within a four acre residential zone. With the construction of I-87, however, the parcel was difficult for the town to service, because no roads from Greenwich crossed I-87 into the parcel. Access to the parcel, therefore, could be obtained only through New York by way of King Street, a two-lane road that runs in New York parallel to the Connecticut and New York state line.[1] Thus, police and fire services to the parcel would be substantially delayed. Further, the parcel was not serviced by public water or public sewage systems. The construction of I-87 also brought with it the possible expansion of the nearby Westchester Airport, because the airport would become more accessible to Westchester and Fairfield counties. The parcel was located directly within the path of a major runway of the airport.

Not surprisingly, the commission determined that the triangular parcel was no longer suitable for residential zoning. Accordingly, in conjunction with negotiations with the plaintiff, the commission created a new zone, the BEX-50 zone, for this parcel. The purpose

[1] King Street runs through a portion of Greenwich, but ends where it intersects with I-87. The street begins again on the other side of I-87, in New York, and runs parallel to the Connecticut-New York state line. In order to continue on King Street, therefore, a traveler must exit it and follow the connecting roads that pass under I-87 and later reconnect with King Street in New York. King Street is the primary access to certain Greenwich residential areas.

of this new zone, as stated in the Greenwich zoning regulations, was "to provide areas for business executive offices in landscaped settings with low land coverage on large tracts." Greenwich Building Zone Regs. § 6-108 (a). The minimum lot size was set at fifty acres, and additional regulations governing the use and occupancy of property within the zone were enacted. These regulations are contained in § 6-108 of the Greenwich building zone regulations. Among the restrictions on property in the new zone were the single occupant restriction contained in § 6-108 (b) (1) (A) and the limit on employee density in § 6-108 (b) (1) (B). These subsections provided as follows: "(A) No more than one office building or group of office buildings devoted to a single executive office occupancy and use and accessory buildings shall be located on any one lot. (B) Any lot developed for executive office use in this zone shall be limited in use to a maximum number of employees on the site, determined by the size of such lot, measured in acres or fractions thereof, multiplied by a figure of twenty-five (25) employees per acre."

After the BEX-50 zone was created, the plaintiff acquired 154.59 acres in the new zone, along with 26.62 acres in New York that abutted the Connecticut property. In 1970, the plaintiff completed construction of various buildings on the property and used the premises as its corporate headquarters. The plaintiff's facilities included a main office building and a senior executive building totaling approximately 590,000 square feet, a guest house, various outbuildings, and parking for 2539 vehicles, 2112 of which could be parked inside. At the time the BEX-50 zone was created, the commission believed that the existing roads could withstand the anticipated traffic without undue disturbance of residential areas.

Although the town's regulations permitted 3875 employees on the site, the headquarters facilities, built

to the plaintiff's specifications, were configured in such a fashion that they had a useful capacity of only 2850 employees. At its peak activity, the plaintiff had 2400 employees at the site. A change in the plaintiff's mode of operations, however, led to the further underutilization of its facilities, because executive functions once performed by employees at the corporate headquarters were now performed by autonomous subsidiaries located throughout the country. By 1984, the plaintiff's facilities were being used by only 1000 employees. Since the plaintiff no longer required the entire facility, it attempted to market the facility to a single executive user, as the zoning regulations would not permit it to lease the portions of the headquarters that were empty. The plaintiff, however, was unable to sell the property. The plaintiff's real estate broker testified that the single occupancy restriction had a "major detrimental effect" on his efforts to sell the facilities.

In order to realize the value of this underutilized corporate asset and to raise cash through a sale of the property, the plaintiff petitioned the commission on October 31, 1984, to amend the zoning regulations by eliminating the single occupancy limitation in the BEX-50 zone.[2] At the public hearings before the commission, the volume of traffic on King Street and the impact of the proposed amendment on that volume of traffic assumed prime importance. The plaintiff presented to the commission a study on King Street traffic to demonstrate that unlimited occupancy of the subject property would generate less peak hour traffic. The commission, however, found that this study was only of limited value, because it consisted of spot studies

[2] The petition was actually filed by Bruce F. Cohen, as a property owner in the town of Greenwich and as attorney for the plaintiff. Cohen and the plaintiff commenced the appeal from the commission's May 7, 1985 decision. By order dated August 12, 1985, the appeal was dismissed as to Cohen for lack of standing. For simplicity we refer to "the plaintiff's petition" throughout this opinion.

of much smaller office buildings. The commission also had before it a letter from the town traffic engineer, in which he indicated that multiple occupant use tends to increase off peak traffic, as there are more visitors and a duplication of deliveries and service calls. Further, the commission heard testimony and received letters from several residents and residential associations in the King Street area. These residents complained of the traffic congestion on King Street and suggested that an amendment eliminating the single executive user limitation would aggravate already dangerous conditions.

On May 7, 1985, the commission denied the plaintiff's petition. The commission concluded that retention of the single occupancy restriction offered the best opportunity for controlling the level of traffic on King Street and that unlimited multiple occupancy would exacerbate traffic problems in that area, because, among other reasons, there would be increased visits and duplicated services. The commission also advised its staff that it would consider different amendments to the BEX-50 regulations that addressed the commission's concerns relating to traffic.

The commission held a public hearing on its staff's proposal to amend the BEX-50 regulations. Among other revisions, the staff proposed replacing the single occupancy restriction with a ten occupant limit. The staff proposed also amending the twenty-five employee per acre density limit. In the case of a single occupancy, the staff's proposal would retain the per acre limit of twenty-five employees, including temporary and support personnel. In the case of multiple occupancy, the staff proposed a new limit of eighteen employees per acre, including temporary and part-time employees, with support personnel being in addition thereto, for a combined maximum of twenty employees per acre. On June 4, 1985, the commission amended the regula-

tions governing the BEX-50 zone. Under the amended regulations, no more than one executive occupant was permitted on any one fifty-acre lot. On larger lots, more than one executive occupant could occupy a group of buildings, provided that there was a minimum of fifty acres for each occupant. Thus, the plaintiff's property, consisting of 154.59 acres, could accommodate three occupants. With respect to the permitted employee density, the new regulation retained the twenty-five employees per acre limit, in the case of a single occupant, but lowered the limit to eighteen employees per acre, in the case of multiple occupants. Support personnel were allowed in addition to the eighteen per acre limit, but the maximum number of employees could not exceed twenty employees per acre.

The plaintiff appealed, first, from the commission's May 7, 1985 decision to deny its petition to eliminate the single occupancy restriction, and second, from the commission's June 4, 1985 decision to amend the BEX-50 regulations. The two appeals were consolidated for trial before the court. The trial court dismissed the appeal from the May 7, 1985 decision, but sustained in part the appeal from the June 4, 1985 decision.

I

We first consider whether the plaintiff had standing to challenge the decisions of the commission. We address the question of standing for both appeals at this juncture, because the two appeals were consolidated for trial and because the principles governing the requirement of standing are applicable to both cases. General Statutes §§ 8-8 and 8-9 permit appeals from a decision of a planning and zoning commission only by one "aggrieved" by a contested decision. This court has held that compliance with the aggrievement requirement encompasses a twofold test. "First, the party claiming aggrievement must demonstrate a spe-

cific, personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must establish that this specific, personal and legal interest has been specially and injuriously affected by the decision." *Hall* v. *Planning Commission,* 181 Conn. 442, 444, 435 A.2d 975 (1980). The question of aggrievement is one of fact to be determined by the trial court on appeal. *Hughes* v. *Planning & Zoning Commission,* 156 Conn. 505, 508, 242 A.2d 705 (1968).

This court has not set forth a precise standard that defines the required interest a nonowner must possess in order to become an aggrieved party under §§ 8-8 and 8-9. Rather, we have held that the extent to which a party with an interest in the property other than that of an owner is aggrieved depends upon the circumstances of each case, because the concept of standing is a practical and functional one designed to ensure that only those parties with a substantial and legitimate interest can appeal an order. See, e.g., *Bell* v. *Planning & Zoning Commission,* 174 Conn. 493, 498, 391 A.2d 154 (1978); *Nader* v. *Altermatt,* 166 Conn. 43, 53, 347 A.2d 89 (1974); *Hughes* v. *Planning & Zoning Commission,* supra.

On December 19, 1986, while these appeals were pending in the trial court, the plaintiff sold the subject property and buildings to Greenwich-American Limited Partnership, an unrelated entity, but retained four interests in the property. First, the plaintiff has become the lessee of 320,000 square feet in the complex, which is 55 percent of the total square footage. This lease runs for ten years with extension rights for another fifteen years. The plaintiff also leases the entire guest house. Second, the plaintiff is a rent guarantor for the remaining 45 percent of the complex. The rent guarantee runs

for a period of five years. Third, the plaintiff has a right of first refusal for the property in the event that the new owner sells, conveys, or transfers all or any portion of its interest. Finally, the plaintiff holds a purchase money mortgage upon the property in the amount of $15.1 million.

The commission acknowledges that the plaintiff's interest in the subject property prior to December 19, 1986, was sufficient to establish aggrievement. The commission claims, however, that as a result of the sale, the plaintiff cannot satisfy the first prong of the *Hall* test, because it no longer maintains the level of ownership that is necessary to establish aggrievement. The commission emphasizes that the plaintiff entered into a new lease for a ten year term for only a portion of the property.

It is quite clear that in order to retain standing as an aggrieved person, a party must have and must maintain a specific, personal and legal interest in the subject matter of the appeal throughout the course of the appeal. See *Craig* v. *Maher,* 174 Conn. 8, 9, 381 A.2d 531 (1977); *Goldfeld* v. *Planning & Zoning Commission,* 3 Conn. App. 172, 177, 486 A.2d 646 (1985). It is not enough for a party to have an interest in the property sufficient to establish aggrievement only at the time of the application to the commission.

The trial court found that after the sale, the plaintiff had retained enough interests in the property to be considered an aggrieved party. That factual finding is consistent with the cases in which we have implicitly found lessees to be aggrieved parties, in that they were allowed to maintain appellate proceedings. See, e.g., *Chevron Oil Co.* v. *Zoning Board of Appeals,* 170 Conn. 146, 365 A.2d 387 (1976); *Nielsen* v. *Board of Appeals on Zoning,* 129 Conn. 285, 27 A.2d 392 (1942); see also *Gregorio* v. *Zoning Board of Appeals,* 155 Conn. 422, 232 A.2d 330 (1967). Further, the fact

that the plaintiff's lease was for ten years and for only a portion of the office space does not preclude a finding of aggrievement. The commission does not quarrel with *Bowen* v. *Metropolitan Board of Zoning Appeals,* 161 Ind. App. 522, 317 N.E.2d 193 (1974), in which the court found standing for an applicant who leased the entire premises under a ninety-nine year lease. It stresses the duration of that lease as compared to the plaintiff's lease. This distinction is untenable, however, because the court made clear that the crucial point was not the length of the tenancy, but whether the tenant was a mere tenant at will. Id., 529; see also *Richman* v. *Philadelphia Zoning Board of Adjustment,* 391 Pa. 254, 137 A.2d 280 (1958) (cited as authority in *Bowen;* tenant with five year lease of one floor in four story building held to be an aggrieved party).

With respect to the second prong of the *Hall* test, the commission claims that the plaintiff did not demonstrate specific injury and that the trial court presumed that the plaintiff's leasehold interest was sufficient to constitute specific injury without requiring that the plaintiff demonstrate such an injury. The trial court found, however, that the plaintiff's interests had been adversely affected by the commission's decisions. The court stated that the decisions "directly affect the very use of the premises the [plaintiff] now occupies and its legal obligations and interests as to the whole property." In view of this finding, which is adequately supported by the evidence, we see no reason why the plaintiff, to establish aggrievement, should be required to make a more specific showing as to the injury resulting from the commission's decisions. We conclude that the trial court was not in error in finding that the plaintiff remained an aggrieved party.[3]

[3] Because we hold that the plaintiff, as a lessee, remained an aggrieved party in this case, we need not decide whether its status as an abutting landowner in New York was sufficient to constitute aggrievement.

## II

In the first appeal, the plaintiff claims that the trial court erred in concluding that the commission's decision not to delete the single occupancy limitation was neither arbitrary nor confiscatory. Because this claim involves a decision upon an application for a change in the zoning regulations, the trial court was required to review a decision made by the commission in its legislative capacity. *Burnham* v. *Planning & Zoning Commission,* 189 Conn. 261, 265, 455 A.2d 339 (1983). In such circumstances, it is not the function of the court to retry the case. Conclusions reached by the commission must be upheld by the trial court if they are reasonably supported by the record. The credibility of the witnesses and the determination of issues of fact are matters solely within the province of the agency. The question is not whether the trial court would have reached the same conclusion but whether the record before the agency supports the decision reached. *Calandro* v. *Zoning Commission,* 176 Conn. 439, 440, 408 A.2d 229 (1979). The action of the commission should be sustained if even one of the stated reasons is sufficient to support it. *Goldberg* v. *Zoning Commission,* 173 Conn. 23, 26, 376 A.2d 385 (1977).

The plaintiff argues that the reasons given by the commission for denying the petition were not supported by the record, and therefore, the commission acted arbitrarily in its decision. We conclude, however, that the record adequately supports the commission's decision.

In denying the plaintiff's petition, the commission made several findings concerning the relationship between traffic on King Street and the plaintiff's proposed use of its facility. Three of these findings are noteworthy. First, the commission stated that present

traffic volumes in the King Street area were detrimental to the welfare and safety of residents living along King Street. Second, the commission found that peak hour traffic would be increased by a multiple tenant use and that a single tenant use provided better opportunities for traffic management controls. Third, the commission found that the number of trips "generated from the potential increase of visitors, duplicate delivery services and guests associated with accessory activities, such as conferences and training sessions from each executive office user, could generate unacceptable traffic volumes, especially at peak hours on King Street . . . . "

The trial court found that there was no credible evidence in the record that multiple occupancy would increase traffic during peak hours. That finding, however, does not end the inquiry, because, as stated earlier, the action of the commission should be sustained if even one of the stated reasons is sufficient to support it. *Burnham* v. *Planning & Zoning Commission,* supra. In the present case, although the commission focused on peak hour traffic, its reasons for denying the petition encompass a finding of congestion on King Street during off peak hours.

The plaintiff maintains that there is no evidence of congestion in the King Street area during off peak hours, nor is there evidence that the elimination of the single occupancy restriction would create such congestion. The commission, however, heard testimony and received letters from residents and representatives of residential associations in the King Street area who complained of the heavy traffic already on King Street. Their complaints were not limited to concerns over peak hour traffic. This evidence supports a finding by the commission of congestion in the King Street area throughout the day, not simply during peak hours, and the commission members were entitled to rely upon

their own knowledge of the area to confirm the facts to which the King Street area residents had testified. See *Burnham* v. *Planning & Zoning Commission,* supra, 267. Having made such a determination, the commission could reasonably have concluded that the addition of an unknown number of vehicles, from visitors and duplicate telephone, copier and office supply services, for an *unlimited* number of tenants, would serve only to exacerbate an existing dangerous condition in that neighborhood. Because this reason was sufficient to support the commission's decision, we conclude that the record reasonably supports the denial of the plaintiff's petition in this case and that the action of the commission was not arbitrary, illegal or an abuse of its discretion.

The plaintiff maintains also that the single occupancy limitation is confiscatory, because the application of this restriction to this property "practically destroys its value for any permitted use to which it can reasonably be put . . . ." *State National Bank* v. *Planning & Zoning Commission,* 156 Conn. 99, 106, 239 A.2d 528 (1968). The maximum possible enrichment of a particular landowner, however, is not a controlling purpose of zoning. Id., 102; *Corsino* v. *Grover,* 148 Conn. 299, 311, 170 A.2d 267 (1961). Mere reduction in value will not suffice for a claim of confiscation. *DeForest & Hotchkiss Co.* v. *Planning & Zoning Commission,* 152 Conn. 262, 271–72, 205 A.2d 774 (1964). The trial court heard testimony that the underutilization of the property was due primarily to the configuration of the buildings and to the plaintiff's decision to decentralize its corporate operations. Further, at the time of the plaintiff's petition to amend the BEX-50 regulations, the plaintiff was conducting its business on the site with 1000 employees. We agree with the trial court that, under such circumstances, the single occupancy limitation can hardly be said to have prevented the

property's "effective use for any purpose allowed by law." *Horwitz* v. *Waterford,* 151 Conn. 320, 324, 197 A.2d 636 (1964).

The action of the commission in denying the application for a change and leaving the property in its previous classification, therefore, was based on reasonable grounds and cannot be said to be arbitrary or confiscatory.

### III

On June 4, 1985, the commission adopted in modified form a staff proposal to amend the BEX-50 regulations. The commission rejected the portion of the proposal that would have allowed as many as ten executive users per lot and instead amended the regulations to allow the number of occupants that would be possible if the site were subdivisible. The effect of this amendment was to permit three occupants on the plaintiff's 154.59 acre property. The amendment also established an eighteen employee per acre density in the case of multiple occupants. In sustaining the plaintiff's appeal from the commission's decision, the trial court found no basis in the record: (1) for the limitation of three occupants on the premises; and (2) for the reduction of the employee density in the event of multiple occupancy. The commission claims that the trial court assumed a legislative function and should have dismissed the appeal. We disagree.

As we indicated in part II, in order for the commission's action to be sustainable, the record before the agency must support the decision reached. *Calandro* v. *Zoning Commission,* supra. During the public hearings and in the minutes of the commission's deliberations, increased traffic volume was the real concern. Yet, the commission gave no specific reasons why it put a limit of three occupants on the subject property, other than that it wished to accommodate the number

of users that would be possible if the site were subdivisible, while retaining the concept of a single use per fifty acres. Rather, the commission made the general statement that multiple occupancy in the BEX-50 zone would lead to greater congestion during peak hour traffic. We agree with the trial court that there is nothing in the record to support this proposition. As the trial court noted, the sheer randomness of opening and closing times in multiple occupancy buildings suggests a reduction or spreading out of peak hour congestion, and in any event, traffic management controls can be required in single as well as multiple occupant buildings.

The reduction in the allowable employee density was an effort by the commission to offset the presumed adverse effects on peak hour traffic resulting from the corresponding increase in the number of corporate occupants. We again agree with the trial court that the commission's finding of a connection between these two variables has no support in the record. First, there is nothing in the record to indicate how much extra visitor and delivery traffic would be generated by either three or ten occupants in this type of zone.[4] Second, and more fundamentally, the concerns embodied in the two zoning amendments are unrelated. The record indicates that the employee density affects *peak hour* traffic, when employees arrive at and leave a work facility, while the number of corporate occupants affects the *off peak* traffic, as a result of duplicated deliveries and services. The density reduction, therefore, designed to offset the occupancy increase, misses the mark, and in any event, the reasons underlying the occupancy increase have no support in the record. Accordingly,

---

[4] Similarly, in the first appeal, no finding was made by the commission as to how much extra visitor and delivery traffic would be generated by a change in the single occupancy limitation. The first appeal, however, involved a proposal that would have allowed an *unlimited* number of corporate occupants. Thus, making such a finding in the first case would have been more difficult, if not entirely speculative.

because the record does not support the commission's decision, we conclude that the trial court did not err in sustaining the plaintiff's second appeal.

There is no error in either case.

In this opinion the other justices concurred.