[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Aggrievement
Aggrievement is a prerequisite to maintaining an appeal. Smith v. Planning Zoning Board, 203 Conn. 317, 321 (1987). The owner of a subject property is aggrieved and entitled to bring an appeal. Bossert v. Norwalk Zoning Commission, 157 Conn. 279, 285 (1968). CT Page 2379
The record herein does not include a warranty deed for the subject property which would evidence ownership of the property for purposes of aggrievement. The plaintiff does allege that it is the contract purchaser of the subject premises, and that it is the applicant for the special permit concerning the subject premises. (Plaintiff's appeal petition, paragraph 4).
"[A] contract purchaser of real property, . . . has sufficient interest in the property to have standing to apply for a special exception or zoning variance." Shapero v. Zoning Board, 192 Conn. 367. 376 (1984) (citations omitted).
It is the opinion of the court that the plaintiff as a contract purchaser should be determined that as such it has sufficient interest in the property, and therefore the court finds the plaintiff is aggrieved. Timeliness
Notice of the commission's decision was published in The Hour, a daily newspaper published in Norwalk, on December 28, 1989. (Record Item 29). On January 10, 1990, service was made upon Beryl Fernschild, City Clerk, authorized to accept service for the Norwalk Zoning Commission; Linnea Greig, Assistant Town Clerk, authorized to accept service for Town Clerk, and James Cunningham, Chairman of the Norwalk Zoning Commission. It is found that this appeal is timely because service of process was made within the fifteen day appeal period. Conn. Pub. Acts No. 90-286, 1(b), 3, 9.
SCOPE OF REVIEW
A "court may grant relief on appeal only where the local authority has acted illegally or arbitrarily or has abused its discretion." Frito-Lay, Inc. v. Planning and Zoning Commission, 206 Conn. 554, 573 (1988) (citation omitted). The plaintiff bears the burden of proving that the board acted improperly. Adolphson v. Zoning Board of Appeals, 205 Conn. 703,707 (1988). The trial court must not substitute its judgment for that of the local authority. Frito-Lay, 206 Conn. at 572-73. The court merely determines if the record reasonably supports the conclusions of the commission. Primerica v. Planning and Zoning Commission, 211 Conn. 85,96 (1989). The commission's action "should be sustained if even one of the stated reasons is sufficient to support it." Id. at 96. When the zoning commission has "formally stated the reason for its decision the court should not go behind that official collective statement . . . ."
DeMaria v. Planning and Zoning Commission, 159 Conn. 534, 541
(1970). The court should "not attempt to search out and speculate upon other reasons which might have influenced . . . the members of the commission to reach the commission's final collective decision." Id. at 541.
FACTS CT Page 2380
On August 24, 1989, Merrimac Associates submitted a special permit application to the Norwalk Zoning Commission. (Record Item 2, Special Permit Application). The applicants are seeing approval to construct a 38-unit condominium complex comprised of 33 two-bedroom units and 5 single-bedroom units in a residence zone that is designated as a "(D)" residence zone. (Record Item 2, Special Permit Application). According to the Norwalk zoning regulations, a "(D)" residence zone allows multifamily dwellings that contain less than 12 dwelling units and provides that other uses consistent with the permissible density are allowable by a special permit. (Record Item 30, Norwalk Zoning Regulations, 5118-360). On October 18, 1989, a public hearing was held concerning Merrimac Associates' special permit application. (Record Item 11, Legal Notice; Record Item 15, Transcript). On December 20, 1989, the commission denied the application, stating that the "traffic was so bad that it would be unconscionable to just add more traffic, however minor it may be. . . ." (Record Item 26, Transcript). The commission further resolved that the application did "not comply with the standards for Special Permits," specifically section 118-1450(c)(1)(b), and that "traffic volume, flow and control, which break down to an undesirable level of service, thereby adversely [impact] vehicular safety and convenience upon a public roadway." (Record Item 26, Transcript Record Item 27, Letter of Decision; Record Item 29, Legal Notice). The plaintiff, Merrimac Associates, appeals from the decision of the defendant commission.
Initially, the plaintiff contends, in its brief dated July 26, 1990, that the commission's denial of its special permit is not reasonably supported by the record because undisputed expert testimony reveals that the proposed condominium development will have no significant impact on the existing traffic levels at this location. The defendant claims that the record amply supports the reason for its denial of the application because a review of the relevant traffic studies reveal that the present traffic conditions are "sufficiently difficult . . . which would only get worse over time." (Defendant's Brief, dated October 23, 1990).
Record Item 26, Verbatim Transcript, reveals that the commission denied the plaintiff's special permit application because it determined that the construction of the proposed 38-unit condominium development on the subject premises would add more traffic. A commission member, Mr. Cole, specifically stated the following:
 [T]raffic volume, flow and control, which breakdown to an undesirable level of service, [would] thereby adversely [impact] vehicular safety and convenience upon a public roadway. (Record Item 26).
Conn. Gen. Stat. 8-2 (revd to 1989) provides that a zoning commission may require through its regulations, that "certain classes or kinds of buildings, structures or kinds of buildings, structures or CT Page 2381 uses of land are permitted only after obtaining a special permit or special exception from a zoning commission. . . ." and "[s]uch regulations shall be made in accordance with a comprehensive plan and shall be designed to lessen congestion in the streets . . . ." Id. Record Item 30, Building Zone Regulations of the City of Norwalk dictates the standards by which a special permit may be issued. See Section 118-1450 (c)(1). Among the conditions to be considered by the commission is condition (b) of Section 118 — 1450(c)(1), which is:
 "Traffic volume, flow and control with reference to pedestrian and vehicular safety and convenience, and access in case of catastrophe or emergency."
Record Item 32, the traffic study for the Kerschner Company residential condominium project, reveals in its conclusion, p. 10, , p. 10 the following: "The amount of traffic added from the Kerschner site is quite small . . . . The intersection at Connecticut Avenue and Richards Avenue currently operates at Level of Service D in the morning and Level of Service C in the afternoon. The proposed Kerschner project will not change this . . . . Installation of a stop sign at the intersection of the site driveway and Richards Avenue will adequately control traffic from the development." Id. at pp 10-11.
Record Item 9, Addendum to Traffic Study, reveals that "[t]he of the site traffic from the proposed 42-unit development would not change the present conditions." Id. Those conditions were that "[d]uring the morning peak hour, traffic operates at Level of Service C. In the afternoon peak hour, traffic operates acceptably on U.S. Route 1 with poor operations on both approaches of Richards Avenue." Id. at p. 2 [Note that this study was based on a 42-unit project, which was later changed [do a 38-unit project]. (See Record Item 16). Record Item 13, Memorandum from Plan Review Committee to Zoning Commission, paragraph entitled Traffic Impact, states in relevant part that "[t]he existing level of C (May 1989) for the Rt. 1 and Richards Avenue intersection will not change as a result of the proposed development, however, the Norwalk Community College will have a significant impact upon the intersection which will result in a deterioration of operations unless improvements are made." Id.
Testimony was elicited at the hearing held on October 18, 1989 by Mr. Alan Mess, the traffic study expert, and it is submitted that this testimony supports the original findings made by Mr. Mess in the traffic study prepared by Barkan Mess Associates, Inc. (Record Item 15).
"Conclusions reached by the commission must be upheld if they are reasonably supported by the record. The credibility of the witnesses and the determination of issues of fact are matters solely within the province of the agency. The question is not whether the trial court would have reached the same conclusion, but whether the record before the agency CT Page 2382 supports the decision reached." Primerica v. PZC. 211 Conn. 85, 96
(1989) (citations omitted).
It is the opinion of this court that the record herein allowed the defendant zoning commission to consider traffic volume, flow and control pursuant to Section 118-1450(c)(1)(b) of its regulations. However, it is found by the court that the record does not support the agency's finding that traffic in the area of the proposed project will be detrimentally affected, but rather the record does reveal that the Community College project would result in a deterioration of traffic conditions in the area.
Therefore, it is the court's finding that the record does not reasonably support the defendant commission's decision to deny the plaintiff's special permit application based upon a detrimental effect upon traffic in the area. The plaintiff's appeal is sustained.
JOHN J. P. RYAN, JUDGE.