[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a zoning appeal, brought pursuant to Connecticut General Statutes Section 8-9 which incorporates Connecticut General Statutes 8-8. The plaintiffs Westfield, Inc. and Westland Properties, Inc. (hereinafter collectively referred to as (`Plaintiff') appeal as landowner from the decision of the defendant Planning and Zoning Commission of the town of Trumbull (hereinafter `Commission') denying their application for a "special permit." Plaintiff's application sought approval of an expanded use of property located at 5065 Main Street, Trumbull, Connecticut, otherwise known as the Trumbull Shopping Park.
The proposed expansion would include an addition of 200,000 square feet for construction of a new Lord Taylor facility, additional small stores, a new parking deck and additional on-site parking. (R.R. 1) The subject premises are located in a Commercial B-C (Business) as indicated in Article II, Section 2 of the Town of Trumbull Zoning Regulations. (R.R. 10)
The Commission rendered its decision to deny the plaintiff's application on March 12, 1990. (R.R. 7) Notice of the Commission's denial of the plaintiff's application was published on March 23, 1990. (R.R. 8)
Plaintiff generally contends that the Commission acted illegally, arbitrarily and in abuse of its discretion.
The plaintiff, as record owner of the land herein, is statutorily aggrieved pursuant to Connecticut General Statutes8-8.
A trial court is not at liberty to substitute its judgment for that of the administrative tribunal. See Frito-Lay, Inc. v. PZC, 206 Conn. 554, 572-73 (1988). The court is only to determine whether the agency has acted illegally, arbitrarily, or in abuse of its discretion. See Frito-Lay, Inc.,206 Conn. at 573. The court is simply to determine whether the record reasonably supports the conclusions reached by the agency. CT Page 3681 Primerica v. PZC, 211 Conn. 85, 96 (1989); Burnham v. PZC,189 Conn. 261, 265 (1983). "The question is not whether the trial court would have reached the same conclusion but whether the record before the agency supports the decision reached." Id. at 265.
The Commission's action is to be sustained if any one of the reasons stated is sufficient to support the decision. Primerica, 211 Conn. at 96. The burden of proof to demonstrate that the board acted improperly is upon the plaintiff. Adolphson v. ZBA, 205 Conn. 703, 707 (1988); Burnham,189 Conn. at 266.
The Commission gave five reasons for its denial of the plaintiff's "special permit" application. (R.R. 7)
The Commission denied plaintiff's application for a special permit for the following reasons:
 1) It would be detrimental to the public health, safety, and welfare of the surrounding residents, due to increased traffic, noise, and crime.
 2) It would constitute further intrusion into the residential areas.
 3) The proposal is in conflict with recommendations in the Plan of Development for the town.
 4) The traffic problems in the area would be exacerbated by the expansion, and have a detrimental impact on the health, safety, and welfare of the people using the roadways in the immediate area, especially the Merritt Parkway.
 5) It would have negative impact on the property values of the surrounding residential homes.
"A special permit allows a property owner to use his property in a manner expressly permitted by the local zoning regulations. . . . The proposed use, however, must satisfy standards set forth in the zoning regulations themselves as well as the `conditions necessary to protect the public health, safety, convenience and property values.' General Statutes8-2. . . . Acting in this administrative capacity, the board's function is to determine whether the applicant's proposed use is expressly permitted under the regulations, and whether the standards set forth in the regulations and the statute are satisfied. A.P. W. Holding Corporation v. PZB, 167 Conn. 182,185 (1974) (citations omitted). CT Page 3682
The plaintiff has brought a three count, fourteen page amended appeal petition dated April 25, 1990. Plaintiff, in its first count, alleges in pertinent part that:
 25. The Regulations set forth specific standards to guide the Zoning Board of Appeals when it acts on Special Exceptions but set forth no such standards for the Commission in acting upon Special permits in the Commercial Zone B-C (Business).
 27. The "special permit" approval process set forth in Article II Section 2, in the absence of any such standards or guidelines, constitutes a site plan approval process.
 28. A site plan application is governed by the provisions of Section 8-3 (g) of the Connecticut General Statutes and requires approval when all requirements of the Regulations are met.
 29. Plaintiff has complied with all of the requirements of the Regulations and is aggrieved by the decision of the Commission.
 30. The Commission is without discretion to disapprove of said application and lacks standards so to do.
Plaintiff, in its second count alleges in relevant part that:
 9. [O]n March 12, 1990 the Commission held what is described as a "Workshop Session."
 10. No notice of said workshop session was provided to the applicant.
 11. Said workshop session was called for the purpose of allowing the Commission to act on any and all applications pending before it at that time.
 12. Plaintiff's application was at that time pending before said Commission, the public hearing having been closed.
 13. The workshop session was a meeting at which it was contemplated that the Commission would take actions upon pending applications including the plaintiff's application, and in fact the Commission acted upon Westfield's application at that meeting and denied same.
 14. Pursuant to Section 8-3 of the Connecticut General Statutes, said denial is an action of the Commission from which an appeal lies. CT Page 3683
 17. Statements were made at said hearing which tended to evidence prejudgment and prejudice by some Commission members.
 19. Said workshop session as it pertained to Westfield's application was in fact a continuation of the hearing by the Commission on said application.
 20. No competent stenographer was called in to take the evidence and no sound-recording device was used to record the evidence.
 21. Plaintiff is aggrieved by the decision of the Commission.
The plaintiff requests that the action taken by the Commission at the workshop session be declared void.
Plaintiff, in its third count alleges in pertinent part that:
 27. If it is determined that the Commission had discretion then said Commission acted illegally, improperly and in abuse of any discretion it may have had in that:
 (a) It denied said application when said application satisfied all of the requirements for approval set forth by the Commission in its Regulations.
 (b) It exceeded its authority by imposing requirements for approval not set forth in the Regulations.
 (c) It failed to apprise Applicants coming before it, and particularly the Plaintiff, of the standards and requirements it intended to use in its decision making process.
 (d) In denying said application it acted without sufficient basis in the record to justify a denial.
 (e) It failed to provide a record of its proceedings.
 (f) It failed to consider the evidence presented to it.
Plaintiff initially contends in its brief that its special CT Page 3684 permit application proposed a use of the property which complied with the Trumbull zoning regulations and as such, the Commission lacked the discretion or authority to deny the application. Plaintiff further claims that the Commission's stated reasons are invalid. Additionally, plaintiff contends that the Trumbull regulations relating to special permit applications do not set forth any standards for the granting of such permits and the Commission failed to articulate sufficient conditions upon which the plaintiff could revise its application.
The defendant contends in its brief that the Trumbull special permit regulations do contain sufficient standards on which to base a denial of the plaintiff's application. Defendant relies on the case of Aiello v. PZC of the Town of Trumbull and W. Clinton Thornton, Court of Common Pleas, County of Fairfield at Bridgeport, D.N. 10-14-98 and 10-27-23 (Satter, J., June 25, 1976), for the proposition that the Trumbull zoning regulations are sufficiently precise to control any development in Commercial B-C zones and give the Commission authority to deny the plaintiff' special permit application in the instant appeal.
The plaintiff further contends that the approval process for its application was essentially a site plan approval process. Plaintiff claims that because it already holds a special permit for the property in issue, plaintiff's proposed expansion essentially involved only a consideration of a site plan, despite the fact that no form is provided for applying for a site plan.
Appendix B, which is attached to plaintiff's brief, item 6, is the Transcript of the Public Hearing before the Planning and Zoning Commission dated February 22, 1990. Although this transcript reveals at page 2 that the defendant Commission was to consider an application for a special permit, nothing in paragraph 1 of page 2 reflects that the plaintiff's proposed `use' was being considered by the Commission. See also (R.R. Id Cover Sheet of Plans which states: `Application for Special Permit Feb. 1, 1990,' and R.R. 3 Legal Notice of `Special Permit' Application).
Paragraph 1 states that:
 1) Westfield, Inc. 5065 Main Street. Pursuant to Art. II, Sec. 2, and Art. IV, Sec. 4 of the Zoning Regulations, to permit 200,000 s.f. expansion of Trumbull Shopping Park for the construction of a proposed new Lord Taylor facility, additional small stores, new parking deck, plus additional parking. CT Page 3685
The defendant Town of Trumbull contends in its brief, page 13, that under the portion of the special permit regulation, Article II, Section 2D entitled `Continuing Nature of Standards,' each expansion of the special permit for the shopping center is a new application and must stand or fall on its own merits in the light of the continuum of development of the town; the abutting roadways — both state and local; the status of developing technology; and the conditions then and there prevailing. It is also the Commission's contention that all sections of the Trumbull regulations are covered by the general preamble to its regulations wherein it states:
 In accordance with the provisions of Chapter 123 of the General Statutes of the State of Connecticut, Revision of 1958 as amended and for the purpose of providing for the health, safety and general welfare of the Town of Trumbull, to conserve the value of real property, to encourage the most appropriate use thereof throughout the town and to accomplish the other purposes set forth in detail in said chapter of the General Statutes, and in accordance with a comprehensive plan, the zoning regulations of the town of Trumbull are hereby revised to read as follows: . . . (Emphasis added)
(Defendant's Brief, pp. 12-13).
Article II, Section 2D of the Trumbull Zoning Regulations specifically states the following:
D. Continuing Nature of Standards
The regulations, prohibitions and standards herein set forth are expressly declared to be on continuing application. Any permission to use land for business or commercial purposes shall be subject to compliance with the regulations, prohibitions and standards herein set forth; and upon failure to comply with the same within 24 hours after written notice of non-compliance from the Planning and Zoning Commission, said Commission may revoke any permission previously granted and enjoin any such use. The approval of any application for a special permit shall be conditioned upon start of construction within six months, and completion of the proposed CT Page 3686 improvements in accordance with the approved plans within a period of two years from the effective date of special permit. In the event of an appeal or appeals, the time period shall commence from the date of final decision on the appeal or appeals. One extension for an additional period not to exceed one year, may be granted by the Commission after a hearing for good cause shown.
The defendant Commission's interpretation of the above section is flawed in that the regulation does not specifically require an applicant to apply for a special permit when an expansion of a shopping center is sought. The section specifically states that the regulations, prohibitions and standards herein set forth are expressly declared to be of continuing application. The meaning of this phase is unclear in that, taken literally, it would appear to deprive the Commission's decisions of finality, where a special permit was previously granted.
"`The designation of a particular use of property as a permitted use establishes a conclusive presumption that such use does not adversely affect the district and precludes further inquiry into its effect on traffic, municipal services, property values, or the general harmony of the district.'" TLC Development, Inc. v. PZC, 215 Conn. 527, 532-33 (1990). (citation omitted)
The transcript of the public hearing dated February 22, 1990 reflects that "[t]he use to which the premises are already put has been approved in prior applications by this Commission in prior proceedings." (Appendix B, Item 6, p. 3, attached to plaintiff's brief). (emphasis added) The previous special permit application was dated January 13, 1982 and granted subject to certain conditions on March 12, 1982. (Appendix B, Exhibit 6c, attached to plaintiff's brief).
At this juncture, what the defendant Commission had before it for consideration was a site plan, not a special permit, as a special permit was issued in 1982 as previously discussed. Additionally, even if this court were to construe plaintiff's application as a special permit, which it in fact does not, this court finds that there are no specific ascertainable standards in the Trumbull Zoning Regulations to guide an applicant who seeks approval of a special permit. Insofar as such standards may be ascertainable there is no evidence in the record which would support a finding of noncompliance by the plaintiff applicant. CT Page 3687
The term `site plan' is not defined in Connecticut General Statutes 8-3 (g), nor do the Trumbull Zoning Regulations define `site plan.' However, the Connecticut Appellate Court has defined `site plan' in the case of SSM Associates Limited Partnership v. PZC, 15 Conn. App. 561, 566 (1988), aff'd.211 Conn. 331 (1989), as delineated in Connecticut General Statutes8-3 (g). It is defined as "a general term which is used in a functional sense to denote a plan for the proposed use of a particular site, purporting to indicate all the information required by the regulations for that use. As such, it includes the entire package of documents submitted to a zoning `commission or other municipal agency or official to aid in determining the conformity of a proposed building, use or structure with specific provisions of such [zoning] regulations.' General Statutes 8-3 (g)." Id. at 566.
"A `site plan' is a physical plan showing the layout and design of the site of a proposed use, proposed by the builder or developer. It generally should indicate the proposed location of all structures, parking areas and open spaces on the plot and their relation to adjacent roadways and uses. Specifically, items such as grade elevation levels, drainage plans, means of access, landscaping, screening, architectural features, building dimensions and other elements relevant to the community welfare are properly included in a site plan. . . .'" Id at 567 (citation omitted). "`A site plan is a plan required to be submitted by the builder, showing the proposed location of the buildings, parking areas, and other installations on the plot, and their relation to existing conditions, such as roads, neighboring land uses, natural features, public facilities, ingress and egress roads, interior roads, and similar features.'" Id. (citation omitted). "The virtue of our reading of the term [site plan] as used in 8-3 (g) is that of uniformity; the meaning of the statute will remain the same as it is applied from town to town." Id. at 568.
Connecticut General Statutes 8-3 (g) provides in part: "`The zoning regulations may require that a site plan be filed with the commission . . . to aid in determining the conformity of a proposed building, use or structure with specific provisions of such regulations. . . . A site plan may be modified or denied only if it fails to comply with requirements already set forth in the zoning . . . regulations.'" TLC Development, Inc.,215 Conn. at 529-530.
Record Item 10, p. 41 of the Trumbull Zoning Regulations states the requirements for limits on height and bulk of buildings. Maximum building height is 35 feet; maximum lot coverage is 20%. and Article II, Use Regulations, Section 2, Par. A, Sub-Par. 10 was amended by adding: [A]ny such parking CT Page 3688 garages and decks shall not in the aggregate exceed 10% of the total area. See Appendix B, Transcript p. 105.
Record Item ld `Site Plan' reveals that the total building coverage is at 18.9% and parking deck coverage is at 8.7%, which is below the level allowed by the regulations. Exhibit B, Transcript p. 107 reveals that "[N]o building is more than 34.5 feet to the roofline." (Testimony by Atty. Shipman, p. 107). The Trumbull Zoning Regulations, p. 41, allow a maximum building height of 35 feet. Therefore, the plaintiff's site plan conforms to the Zoning Regulations' height requirement.
Neither the stated reasons given by the Commission for its denial nor a thorough search of the record discloses any evidence that the applicant failed to conform to each and every applicable requirement of the Trumbull zoning regulations. There is no basis in the record for the Commission's denial of the plaintiff's application. The Commission's denial of the plaintiff's application was illegal and arbitrary.
Furthermore, since the foregoing is dispositive, it is unnecessary for the court to address plaintiff's additional claims of error on the part of the defendant Commission.
For the above reasons, the plaintiff's appeal is sustained. The defendant Commission is ordered to approve the plaintiff's application, in that there is no other conclusion that could have been reached by said Commission.
Dean, J.