[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 I STATEMENT OF THE CASE
CT Page 15941-jx
The plaintiff, Onmipoint Communications, Inc., appeals the decision of the defendant, the zoning board of appeals (board) of the town of Thompson (town), denying Omnipoint's application for a rear setback variance. Because Omnipoint has not met its burden of proof on the issue of aggrievement, the court dismisses the appeal.
 II FACTS AND PROCEDURAL HISTORY
Omnipoint is one of six federally licensed personal wireless service carriers in the state of Connecticut. (ROR, Items W, p. 2; X, p. 1.) On March 17, 1999, Omnipoint entered into a lease agreement with Kenneth Lechert for a portion of the property located at 375 Riverside Drive in North Grosvenordale.[1] (Plaintiff's Exhibit 2.) In order to construct a wireless communications tower on this property, on or about February 7, 2000, Omnipoint applied to the board for a variance of the rear setback requirements contained in the town's wireless communications regulations. (ROR, Items A; Z, Thompson Wireless Communication Regs.) Section 1.3.B of these regulations provides that a wireless telecommunications tower "must comply with setback requirements of the zone in which it is located, or be set back from all property lines a distance equal to the height of the tower, whichever is greater." (ROR, Item Z, Thompson Wireless Communication Regs., p. 7.) The tower that Omnipoint seeks to construct is 180 feet tall; (ROR, Item W, p. 3.); and, therefore, a setback of 180 feet from all adjacent property lines is needed. (ROR, Items X, pp. 3, 9; Z, Thompson Wireless Communication Regs., p. 7.) Although the property is larger than necessary to meet the setback requirements, Connecticut Light and Power (CLP) has an easement that cuts through the middle of this property upon which exist high tension wires. (ROR, Items R, Site Plan; W, p. 3.) Omnipoint sought CLP's permission to use a portion of this easement in the construction of its tower in order to met the town's setback requirements, but CLP refused, stating that it does not allow structures within its easement areas. (ROR, Items W, p. 10; Q, letter from Northeast Utilities.)
Although Omnipoint already has two telecommunications towers that serve the town; (ROR, Item W, p. 5.); there remains a 2.8 mile gap in coverage, which Omnipoint seeks to fill with the construction of this 180' tower. (ROR, Item W, p. 5.) In its variance application, Omnipoint specified that its hardship resulted from the fact that its "Federal Communication Commission license requires Omnipoint to provide continuous coverage [and] [t]his is the only available site which will fill the gap in coverage in this area." (ROR, Item A.) CT Page 15941-jy
The board scheduled a public hearing for March 13, 2000, but that hearing was canceled due to the lack of a quorum. (ROR, Item D.) The public hearing was rescheduled by the board and began on April 10, 2000. (ROR, Items M; W.) Initially, the board voted to close the public hearing on April 10, 2000, but board members were concerned as to whether all adjacent property owners were properly notified by the applicant. A vote was taken to reopen the public hearing and continue it to May 8, 2000 in order to allow the applicant more time to notify additional neighbors, including the state department of environmental protection, which owns the property to the rear.[2] (ROR, Items M, p. 2; W, pp. 20-22.)
The board concluded the public hearing on Omnipoint's variance application on May 8, 2000, and voted to deny the variance application at its regular meeting following the close of the public hearing. (ROR, Item X, pp. 10, 12-13.) Notice of the board's decision was published on May 17, 2000, in the Webster Times. (ROR, Item U.)
Omnipoint commenced this appeal by service of process on June 1, 2000, pursuant to General Statutes § 8-8.[3] Additional facts and procedural history will be provided as necessary.
 III JURISDICTION
Court appeals from administrative agency decisions exist only under statutory authority. Simko v. Zoning Board of Appeals, 206 Conn. 374,377, 538 A.2d 202 (1988). "A statutory right of appeal from a decision of an administrative agency may be taken advantage of only by strict compliance with the statutory provisions by which it is created." (Internal quotation marks omitted.) Id. Such provisions "are mandatory and jurisdictional in nature, and, if not complied with, the appeal is subject to dismissal." (Internal quotation marks omitted.) Id.[4]
 A Aggrievement
The question of aggrievement is essentially one of standing. McNallyv. Zoning Commission, 225 Conn. 1, 5, 621 A.2d 279 (1993). A lessee of property may be aggrieved and entitled to bring an appeal. See Primericav. Planning Zoning Commission, 211 Conn. 85, 95, 558 A.2d 646 (1989);RR Pool Home, Inc. v. Zoning Board of Appeals, 43 Conn. App. 563,569-70, 684 A.2d 1207 (1996). CT Page 15941-jz
"[The Supreme Court] traditionally [has] applied the following two part test to determine whether aggrievement exists: (1) does the allegedly aggrieved party have a specific, personal and legal interest in the subject matter of a decision; and (2) has this interest been specially and injuriously affected by the decision. Mystic Marinelife Aquarium,Inc. v. Gill, 175 Conn. 483, 493, 400 A.2d 726 (1978); see, e.g., NewHaven v. Public Utilities Commission, 165 Conn. 687, 700, 345 A.2d 563
(1974); Nader v. Altermatt, 166 Conn. 43, 51-53, 347 A.2d 89 (1974);Johnson v. Zoning Board of Appeals, 156 Conn. 622, 623, 238 A.2d 413
(1968); Hughes v. Town Planning Zoning Commission, 156 Conn. 505,507-508, 242 A.2d 705 (1968); Gregorio v. Zoning Board of Appeals,155 Conn. 422, 425-26, 232 A.2d 330 (1967). Proof of aggrievement is, therefore, `an essential prerequisite to the court's jurisdiction of the subject matter of the appeal.' Mystic Marinelife Aquarium, Inc. v. Gill,
supra, 493; see also Hughes v. Town Planning Zoning Commission, supra, 509." Gladysz v. Planning Zoning Commission, 256 Conn. 249, 256, ___ A.2d ___ (2001).
"Because aggrievement is a jurisdictional question, and therefore, the `key to access to judicial review,' the standard for aggrievement is rather strict. T. Tondro, Connecticut Land Use Regulation (2d Ed. 1992) p. 535." Id., 257. The burden is upon the applicant to properly plead and prove aggrievement. Quarry Knoll II Corp. v. Planning ZoningCommission, 256 Conn. 674, 702, ___ A.2d ___ (2001).
Omnipoint alleges that, as lessee of the subject property, its interest has been adversely affected by the actions of the board; (complaint, ¶ 17); and testimony, as well as Omnipoint's property lease, was presented to the court at the hearing on this appeal. (See Plaintiff's Exhibit 2.) The board, however, argued, both in its memorandum and at the hearing, that Omnipoint has not sufficiently established aggrievement for the purposes of this appeal.[5] Several of the board's arguments concerning aggrievement were sufficiently addressed by Omnipoint at the hearing, i.e., the lack of a written lease and a deed showing that Lechert owns the property. (See Plaintiff's Exhibits 2, 3.) Nevertheless, there remain related issues concerning aggrievement that must be addressed and properly analyzed.
The board argues in its memorandum that the terms of a lease may have an effect on a plaintiff's aggrievement. It also aptly pointed out at the hearing that ¶ 9 of the lease contains a cancellation clause that allows Omnipoint to cancel the lease with thirty day notice to Lechert. This lease may be canceled for several reasons, including the failure of CT Page 15941-ka Omnipoint to secure the proper approvals for construction or operation of the tower or for economic reasons. Additionally, although Omnipoint entered into its lease with Lechert on March 17, 1999, its term and related rental payments do not commence until Omnipoint secures the necessary approvals to begin construction.
Although there are numerous cases where a lessee has been found aggrieved by the actions of a zoning authority; see, e.g., Primerica v.Planning Zoning Commission, supra, 211 Conn. 85; Chevron Oil Co. v.Zoning Board of Appeals, 170 Conn. 146, 365 A.2d 387 (1976); Nielsen v.Board of Appeals on Zoning, 129 Conn. 285, 27 A.2d 392 (1942); RR Pool Home, Inc. v. Zoning Board of Appeals, supra, 43 Conn. App. 563; see alsoGregorio v. Zoning Board of Appeals, 155 Conn. 422, 232 A.2d 330 (1967); the court has been unable to find a single case where the issue of the lessee's option to terminate the lease, without penalty, has been considered as a possible barrier to aggrievement. The Supreme Court has, however, noted a distinction between an at-will tenant and a lessee, indicating that an at-will tenant is not aggrieved for purposes of taking an appeal from a land use decision. See Primerica v. Planning ZoningCommission, supra, 211 Conn. 95.
In this case, Omnipoint has a written ten year lease that may be extended, in five year increments, for up to twenty-five years. Nonetheless, Omnipoint may cancel this lease without penalty for several different reasons, including its failure to secure the necessary operating permits, or if it determines that the tower is not economically feasible. Additionally, the term of the lease does not actually commence until approvals are secured for construction to begin. Although Omnipoint's interest in this property may be distinguishable from a general interest, such as would concern all members of the community as a whole, its interest, much like an at-will tenant, is tentative at best. In addition to this, the court is also concerned about another issue related to Omnipoint's aggrievement.
The entire lot area of the Lechert property is 188,000 square feet; (ROR, Item R, Site Plan); Omnipoint's lease is for a 50' x 50' area, totaling 2,500 square feet. (Plaintiff's Exhibit 2.) The lease, however, does not state where the 2,500 square feet of leased property is in relation to the entire 188,000 square foot parcel. The lease does state that this area is described in Exhibit A to the lease; Exhibit A, however, does not contain a description of the property but merely states that another exhibit describing the property is to be attached. Nevertheless, there is no further attachment, and Omnipoint did not provide the court with any evidence that the portion of the property upon CT Page 15941-kb which it sought the variance was the portion for which it had secured the lease.
Representatives of Omnipoint also testified at the April 10, 2000 public hearing that Omnipoint requested permission from CLP to utilize a portion of the Lechert property upon which CLP has an easement in order to construct its tower, but CLP refused permission. (ROR, Items W, p. 10.) In a letter dated March 2, 2000, Northeast Utilities confirmed, in writing, its denial of permission to use a portion of the property upon which CLP maintains an easement. (ROR, Item Q, Letter from Northeast Utilities.) Omnipoint's lease with Lechert for a 50' x 50' area, however, was entered into on March 17, 1999, with a notation in Exhibit A that an "exhibit [is] to be attached" that describes the property. (Plaintiff's Exhibit 2.) The court concludes, therefore, that the portion of property to be leased by Omnipoint was not yet defined at the time Lechert and Omnipoint entered into their lease, and there is no evidence before the court that the 50' x 50' portion has ever been defined or that Lechert would approve of the area upon which Omnipoint sought its variance.
The court also notes that ¶ 15(d) of the lease provides that: "No amendment or modification to any provision of this Agreement shall be valid unless made in writing and agreed to and signed by the appropriate parties who have attested and executed this Agreement." Subsection (e) of ¶ 15 provides that the "Lease is contingent on Lessor's approval of construction drawings." There is no evidence before the court that Lechert, the lessor, has approved any drawings, nor is there any evidence that he approves of the exact location of this tower in relation to the entire 188,000 square feet of property, nor is there any evidence that this is the portion of the property that Omnipoint is leasing. This is especially troubling in light of the fact that Omnipoint requested the use of an entirely different portion of the property when it sought permission from CLP to use that portion upon which CLP has an easement.
Lechert did not testify at any of the proceedings before the board; he was not a party to Omnipoint's application, and he is not a party to this appeal. The court is also unable to find any notice of Omnipoint's variance application addressed to him. Although the court finds the evidence of his ownership sufficient; (Plaintiff's Exhibit 3, Warranty Deed); the court finds the lease agreement too indefinite to establish properly Omnipoint's legal interest in this portion of the property. In effect, the lease amounts to an agreement that, commencing upon the securing of the appropriate approvals, Lechert will lease a 50' x 50' area of land to Omnipoint, located somewhere on the property known as 375 CT Page 15941-kc Riverside Drive, if both parties agree to the exact location and Omnipoint finds it economically feasible. Exactly where the area of land will be, remains to be determined by mutual agreement of the parties. Whether Lechert would agree to this particular portion has not been evidenced, and the court cannot make that leap from the evidence presented.
Without proof that the portion of land for which Omnipoint sought a variance is the actual portion that it is leasing, Omnipoint cannot establish that it has an interest and a legal right to this portion of Lechert's property. A lease for an undefined area of land, located somewhere upon a large piece of property, the term and payment of which begins some time in the future, and which may be canceled for any number of reasons, without penalty, is insufficient evidence upon which to make a finding of aggrievement. Accordingly, Omnipoint has not meet its burden of proof to sufficiently establish aggrievement, and its appeal is dismissed.
Judgment may enter accordingly
Kocay, J.