[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an affordable housing land use appeal brought under Section 8-30g
of the General Statutes from the Weston Planning and Zoning Commission's ("the Commission") denial of the plaintiffs' subdivision application.
Procedural History
The plaintiffs commenced this appeal on April 23, 2001 by service of process upon Weston's Town Clerk and upon the chairperson of the Commission. The appeal was filed in the Superior Court, Judicial of Stamford Norwalk at Stamford and then transferred on July 18, 2001 to the Superior Court, Judicial District of New Britain, tax and administrative appeals session. On October 9, 2001 the Commission filed its answer and return of record. The Commission filed its brief on November 9, 2001 and the plaintiffs filed their brief on February 20, 2002. The court heard argument on the appeal on May. 6, 2002.
Facts
The plaintiffs own approximately 83.4 acres of land in Weston composed of several irregularly shaped parcels which are being combined into three separate parcels to create this development. On September 6, 2000 the plaintiffs submitted to the Commission an application for subdivision approval as an affordable housing development. The plaintiffs' application proposed to develop 15.7 acres with eighteen single family residential CT Page 8075 units in a cluster design. The plaintiffs proposed to set aside the remaining 67.7 acres as either open space or under a conservation easement. The plaintiffs' application proposed that five of the proposed units would be affordable units pursuant to Section 8-30g of the General Statutes, thereby creating an affordable housing development.
The Weston zoning regulations require a minimum of two acres for each single building lot.
Statistics prepared by the State of Connecticut Department of Economic and Community Development demonstrate that Weston has approximately 3, 448 housing units of which only one qualify as subsidized or deed restricted housing units as defined by Section 8-30g. This places Weston 168 of 169 of Connecticut towns with regard to availability of affordable housing units.
The plaintiffs did not file a simultaneous application with the Weston Inlands Wetlands agency. Rather, the plaintiffs relied upon an inland wetlands approval they had obtained on September 15, 1999 for an eight lot conventional subdivision which was never approved by the Commission and was never built.
The Commission held a public hearing on the plaintiffs' subdivision application on December 18, 2000, January 8, 2001, January 22, 2001, and February 13, 2001. Commission denied the plaintiffs' application on April 5, 2001.
Aggrievement
The plaintiffs own the land which is the subject of this appeal. As owners of the property and applicants to the defendant commission, the plaintiffs are aggrieved by the denial of the application. See, Section8-30g (f); Winchester Woods Associates v. Planning Zoning Commission,219 Conn. 303, 308 (1991).
Standard of Judicial Review
Pursuant to Section 8-30g (g) the burden is "on the commission to prove, based upon the evidence in the record compiled before such commission that the decision from which such appeal is taken and the reasons cited for such decision are supported by sufficient evidence in the record. The commission shall have the burden to prove, based upon the evidence in the record compiled before the commission, that (1)(A) the decision is necessary to protect substantial public interests in health, safety or other matters which the commission may legally consider; (B) such public interests clearly outweigh the need for affordable housing; CT Page 8076 and (C) such public interests cannot be protected by reasonable changes to the affordable housing development . . ." The Supreme Court has interpreted the above language to mean the court must determine ". . . whether the commission has shown that its decision is supported by sufficient evidence in the record. Under subparagraphs (B), (C) and (D) [now subparagraphs (A), (B) and (C)] of the statute, however, the court must review the commission's decision independently, based upon its own scrupulous examination of the record. Therefore, the proper scope of review regarding whether the commission has sustained its burden of proof namely that: its decision is based upon the protection of some substantial public interest; the public interest clearly outweighs the need for affordable housing; and there are no modifications that reasonably can be made to the application that would permit the application to be granted — requires the court, not to ascertain whether the commission's decision is supported by sufficient evidence, but to conduct a plenary review of the record in order to make an independent determination on the issue." Quarry Knoll II Corp. v.Planning Zoning Commission, 256 Conn. 674, 727 (2001).
Discussion
The reasons for the Commission's denial will be reviewed in the order in which they are discussed in the briefs of the parties.
1. The plaintiffs' failure to file a new wetlands application.
Pursuant to Section 8-26, an applicant for subdivision of property containing inland wetlands or watercourses is obliged to file an application with the local wetlands agency no later than the date of filing the subdivision application. The statute also prohibits the planning commission from acting on the subdivision application until it has received a report from the wetlands agency. The plaintiffs did not file an application with the Weston wetlands agency. Instead, the plaintiffs claimed that they were relieved from the obligation to file a wetlands application because they received a wetlands permit in September 1999 for a conventional eight lot subdivision. The plaintiffs claimed that the prior conventional subdivision involved the same regulated activities as the present affordable housing project.
The flaw in the plaintiffs reasoning is that it is the responsibility of the wetlands agency, not the planning commission or the plaintiff, to determine whether the regulated activities are the same in both subdivisions. If the plaintiff is correct, an application to the wetlands agency would have been a mere formality. But, Section 8-26 does not excuse the filing of an application simply because it seems like a mere formality to the applicant. The plaintiff should have filed a wetlands CT Page 8077 application no later than the date the subdivision was filed with the Commission. This failure was sufficient reason to deny the application. See, Greene v. Ridgefield Planning Zoning Commission, 1993 WL 7560 (Berger, J.) at pp. 8-9. Therefore, there is sufficient evidence in the record to support this reason for denial. Also, the Commission has sustained its burden of proof that this reason is based upon the protection of a substantial public interest in the enforcement of the Inland Wetlands statutes. This interest clearly outweighs the Town's need for affordable housing and cannot be met by modifications in the application.
2. Unsafe means of ingress and egress.
One of the reasons given by the Commission for denial was that there was inadequate ingress and egress. The site would be served by only one means of access and egress, a 3, 300 foot long dead-end street. The Subdivision Regulations establish certain standards for dead-end roadways, including that such roadways not have more than 12 units unless the Commission makes specific findings that a waiver is warranted. There was evidence at the public hearing that there are several examples in the town of dead-end roads of longer than 1, 200 feet, although none as long as 3, 300 feet.
Obviously, the limit on dead-end streets is designed for health and safety reasons. Providing adequate access for fire and other emergency vehicles is unquestionably a substantial public interest of paramount concern. The Commission cited the National Fire Protection Association Fire Protection Code which, in Section 4-1.2, calls for dual access in a development such as this. Also, on dead-end ways more than 300 feet in length, Section 4-2.2 calls for a turnaround at the end of the dead-end street having not less than a 120 foot outside diameter sufficient to accommodate fire and other emergency vehicles. There is no claim that this code is binding in Connecticut. Apparently it was offered as evidence of good practice only. The evidence at the hearing established that it is not possible to provide a second means of access to the site. The proposed turnaround is smaller than the one recommended by this code. The Commission also found that there was not enough area to locate a larger turnaround, thereby eliminating the possibility of conditioning an acceptance upon the addition of a turn-around. Finally, the Commission found that: "Specifically, a road of approximately 3,000 feet, with grades of up to ten percent on extended stretches and with no other means of access in this development as proposed by the Applicants, is unsafe, based upon the characteristics of this development." There is sufficient evidence in the record to support these findings.
Therefore, the issue is whether the health and safety concerns about CT Page 8078 the road clearly outweigh the need for affordable housing. They do. Fire safety is as important to an affordable housing development as to any other. It is not the purpose of the affordable housing statutes to encourage the creation of developments which may be hard to protect against fire. The Commission was rightly concerned about this single entry road of such an extreme length. There are no changes which the Commission could have ordered which reasonably could be determined to protect the public interest in having a safe access road.
3. Inadequate public or private water supply for fire fighting purposesand for drinking water.
The Commission also cited inadequate water supply for fire fighting as a reason for denial of the application. The application calls for private wells and a 10,000 gallon water storage tank as the sources of water to fight fires. The Weston Fire Marshal testified that these sources were inadequate and that additional storage capacity would be necessary. The Commission found that there was no room within the development to place additional storage. These findings are based upon sufficient findings in the record.
However, at the public hearing, in response to concerns about the water supply, the plaintiffs advised the Commission that they were prepared to use a public water supply to service the subdivision. This would alleviate the concerns about water supply for all purposes including fire safety, especially when the public supply was coupled with a large storage tank at the end of the dead end street as well as pumps to increase pressure if necessary. The Commission rejected this proposal because of the potential that the public water supply line might have a negative impact upon other property owners. This concern is speculative at best. It does not clearly outweigh the Town's need for affordable housing. For this reason, the Commission, would have been justified in conditioning approval of the project upon an adequate public water supply with sufficient pressure to ensure fire fighting safety.
4. Inadequate public or private drinking water supply.
In addition to the concerns about the adequacy of the water supply as set forth above, the Commission was concerned that a pure supply of water from wells could not be guaranteed because of the possibility of well contamination from the septic systems. Because of the reasons set forth above, the Commission could have handled these concerns by conditioning the approval of the project upon an adequate public water supply.
5. Septic systems. CT Page 8079
The Commission based the decision in large part on the finding that the topography and lack of appropriate soils in quality and amount make the designs of the septic systems too problematic and create too much risk within the proposed subdivision and surrounding area. Specifically, the Commission stated tat the wells within and without the subdivision would be at risk as would the headwaters of the Saugatuck River. Obviously, the risk to wells within the subdivision can be alleviated by conditioning the approval upon an adequate public water supply. But, the risk to wells outside the project and to the Saugatuck River can be eliminated only if the septic systems can be made safe.
This concern about the septic systems was based, in part, upon the testimony of three experts hired by the Commission to review the project. of particular concern was the testimony of Brian C. Curtis, a professional engineer with Nathan L. Jacobson Associates, Inc. who determined that the soil testing performed by the plaintiffs was insufficient to adequately assess the ability of the proposed septic systems to function. Mr. Curtis noted that the high-density configuration of nine septic systems in a three-acre area could lead to nitrogen contamination of water supplies in the area, and that the way the septic systems were "stacked" on top of one another raised issues of whether the soil had sufficient hydraulic capacity to handle quantities of effluent flowing from the affected homes. Mr. Curtis' conclusion was that the septic system areas for lots 10 through 18 lacked sufficient nitrogen dilution capacity.
The engineers offered by the plaintiffs disagreed with Mr. Curtis and the two other experts hired by the Commission. But, the Commission was not required to believe one expert over another. All of the experts have impressive credentials. The Commission was within its rights to find one opinion more credible than another. There was sufficient evidence in the record for the Commission to have found that there were risks associated with the septic systems which could only be answered by further testing. If one or more of the septic locations proves to be unsuitable, the entire project will need to be reconfigured. Therefore, the public interest in safe septic systems could not be protected by reasonable changes to the project or by reasonable conditions.
6. Destruction of community character.
The final reason given by the Commission for denying the application was that the proposed development would disrupt the character and identity of the town which has been based on two-acre zoning for decades. The Commission argued that two-acre zoning had resulted in a rural community which would be threatened by this subdivision which employs a cluster design which places eighteen houses so that each house CT Page 8080 will have not much more than one-half acre of land.
This is an extremely weak argument. First, Section 8-30g does not allow a commission to use its traditional zoning regulations (including minimum lot acreage) to justify a denial of an affordable housing application, but rather forces the commission to satisfy the statutory burden of proofWisniowski v. Planning Commission, 37 Conn. App. 303, 317 (1995). Second, the development is small and is located in a rural area of town. It is part of a tract of 83.4 rugged acres, 67.7 acres of which will remain undeveloped. It is difficult to understand how the character of the town will be affected by this development. Furthermore, even if there will be some negative impact upon the character of the town, this impact would not "clearly outweigh the need for affordable housing" in Weston. Weston's need for affordable housing is dire. It clearly outweighs any fears the Commission has about the impact of the development on the rural character of the town.
Conclusion
There is sufficient evidence in the record to support the Commission's decision to deny the plaintiffs' application for the reasons cited by the Commission that: 1) the plaintiffs did not file a new inlands wetlands application, 2) the access road is unsafe, 3) the septic systems need further testing. The other reasons given by the Commission are not supported by sufficient evidence. The Commission's action may be sustained if even one reason is sufficient to support denial of the application: Primerica v. Planning Zoning Commission, 211 Conn. 96
(1989). The court has made a plenary review of the record and finds, independently, that the record supports a finding that 1) the Commission's decision is necessary to protect identified substantial public interests in health, safety, or other matters which the Commission may legally consider; 2) the public interest clearly outweighs the need for affordable housing as proposed by the plaintiffs; and 3) such public interest cannot be protected by reasonable changes to the application. For these reasons, the plaintiffs' appeal is denied.
 ___________________ Pickard, J.