******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

HANDSOME, INC., ET AL. *v.* PLANNING
AND ZONING COMMISSION OF THE
TOWN OF MONROE
(SC 19262)

Rogers, C. J., and Palmer, Zarella, Eveleigh, Espinosa,
Robinson and Vertefeuille, Js.

*Argued October 23, 2014—officially released July 14, 2015*

*Edward P. McCreery III*, with whom were *Assaf Z. Ben-Atar* and, on the brief, *John H. Van Lenten*, for the appellant (defendant).

*Ian Angus Cole*, for the appellees (plaintiffs).

*Opinion*

ZARELLA, J. The defendant, the Planning and Zoning Commission of the Town of Monroe (commission), appeals from the judgment of the trial court, which sustained the appeal of the plaintiffs, Handsome, Inc. (Handsome), and its principal officers, Todd Cascella and Mona Cascella,[1] from the commission's decision to impose conditions on the granting of an extension of a special exception permit that were not included in the original permit. The commission claims that the trial court incorrectly concluded that (1) the plaintiffs were aggrieved by the commission's decision and thus had standing to bring the appeal, (2) the court had subject matter jurisdiction over the plaintiffs' related claim under the Freedom of Information Act, General Statutes § 1-200 et seq., challenging the propriety of an executive session that the commission held at a hearing on the permit extension application, even though the same claim was pending before the Freedom of Information Commission (FOIC), (3) the commission could not impose additional conditions when it granted the extension, and (4) the additional permit conditions were new. The plaintiffs respond that (1) they were aggrieved by the commission's decision, (2) the trial court did not assert subject matter jurisdiction over the freedom of information claim, and (3) the trial court correctly determined that the disputed conditions were new and that the commission could not impose the conditions when it granted the extension. We conclude that the plaintiffs were not aggrieved by the commission's decision and, therefore, did not have standing to bring the appeal. Accordingly, we vacate the judgment of the trial court.

I

FACTS

The trial court made the following factual findings in its memorandum of decision. In March, 2003, Handsome filed with the commission an application for a special exception permit to construct a 20,000 square foot industrial building on a 9.9 acre property in the town of Monroe (town). The property is located in a design industrial zone at 125 Garder Road. Properties in a design industrial zone are subject to the special exception permit process, which requires compliance with certain applicable regulations before a special exception permit may be granted.

On March 20, 2003, the commission approved the permit application, subject to thirty-six conditions and an expiration date of May 15, 2008. On April 24, 2008, the commission denied Handsome's application for a permit extension because it had not submitted the required progress reports and had not begun construction of the building.

The plaintiffs appealed to the trial court, and, on

September 9, 2010, the court sustained the appeal. The court determined that Handsome's application for a permit extension sought the same relief as the original permit application and that there had been no intervening changed conditions affecting the property. The court thus concluded that the commission "had no option but to approve" the application. The commission did not appeal from the trial court's judgment.

Handsome subsequently asked the commission in letters dated October 1 and November 1, 2010, to issue the permit extension in accordance with the trial court's judgment, but the matter did not appear on the commission's regular meeting agenda until May 5, 2011. At the start of the meeting, the commission immediately went into executive session to discuss what it described as certain general legal matters pertaining to zoning enforcement. The commission invited several land use and zoning officials, as well as the town's first selectman, to participate in the executive session. When the commission reconvened following the executive session, it granted Handsome's application and extended the permit to March, 2013, five years from the expiration date of the original permit but approximately two years from the date of the meeting.

The commission approved two motions in connection with this action. In the first motion, the commission noted that an original condition of approval had been the posting of a bond, that a bond must now be set, and that this would be "a prerequisite [to] commencement of any [on-site] work in accordance with the regulations of prior approval." The commission added that "[a]ll prior conditions of approval that were originally granted with [the] application including all landscaping plans, judiciary plans, no [top soil] removal from the site and anything else from the original application should remain in effect."

The commission also approved a second motion stating that "[n]o work should be conducted at 125 Garder Road until the [b]ond as recommended by the [t]own [e]ngineer is posted. A list of items included: that the requirements that were originally listed remain; that the [c]ommission be provided with the information on who the current engineer is for the property owner; that the required reports from the original approval be provided to the [c]ommission (work that has been done, work that will be going on and work to close out the program); that the engineer will provide a status of the condition of the site (as built of current conditions); and, the final concept plan of what will bring the site to what was originally intended per the approved permit (calculations remaining of how much processed [on-site] removal or being brought in to complete the site). Also included are all of the standing conditions from the original [permit]."

In addition, the permit extension was made subject to

five other "requirements" and several "clarification[s]" relating to the original permit approval in March, 2003. On May 13, 2011, the commission sent a letter to Handsome stating that its application to extend the permit had been granted.

The plaintiffs timely appealed from the commission's decision to the trial court.[2] The record was supplemented by the deposition testimony of eleven individuals, including several town officials and commission members who had participated in the executive session and had voted to extend the permit. On appeal, the plaintiffs challenged the imposition of conditions they alleged had not been part of the original permit. They also challenged the commission's decision to set a new expiration date of May 20, 2013, five years from the expiration date of the original permit, arguing that the permit should have been extended to May, 2016, five years from the date the application to extend the permit was granted. They finally challenged the propriety of the executive session held immediately prior to the May 5, 2011 vote to grant the permit extension.

The commission disagreed with the plaintiffs' claims and, in addition, contended that the plaintiffs did not have standing to appeal. The commission argued that an unrecorded judgment of strict foreclosure against Handsome before the permit was extended deprived Handsome of title to the property and that the Cascellas' status as corporate officers who derived income from Handsome was insufficient to establish that the plaintiffs were aggrieved.

The trial court sustained the plaintiffs' appeal. The court first determined that both Handsome and the Cascellas were aggrieved. It then determined that the executive session held on May 5, 2011, was not authorized by the Freedom of Information Act and that the commission was not permitted, pursuant to the trial court's order, to impose conditions in connection with the permit extension that had not been part of the original permit. It finally determined that the commission's decision to approve the permit extension retroactive to March, 2008, when the original permit expired, was contrary to law.

The court subsequently issued the following order: "The [commission] is directed to approve the special exception permit . . . conditioned only upon the conditions as voted by the commission in 2003, and recited in the final decision of March 20, 2003.

"Pursuant to [c]ondition [17] of the 2003 approval, the commission in a subsequent and separate vote, may require the posting of a bond . . . for the purpose of securing completion of the site work or restoration or stabilizing of the disturbed site dependent on circumstances due to failure to complete, proceed, abandonment, inactivity or other similar lack of improvement,

should it be warranted.

"Any discussion or receipt of information concerning the posting of a bond by the commission shall take place during a public session of the commission, so that any vote will not be tainted by deliberations conducted during an improper executive session.

"The five year extension shall begin to run from the date the commission extends the special exception permit." (Internal quotation marks omitted.)

On July 24, 2013, the Appellate Court granted the commission's petition for certification to appeal from the trial court's judgment, and the appeal subsequently was transferred to this court. Additional facts will be provided as necessary for review of the commission's claims.

II

AGGRIEVEMENT

The commission begins by challenging the trial court's conclusion that the plaintiffs were aggrieved and thus had standing to appeal. The commission claims that the plaintiffs were not aggrieved because Handsome was not the legal owner of the property on May 5, 2011, the date the extension was approved, and the Cascellas, despite their status as corporate officers who derived income from the corporate entity, were not, from a legal standpoint, specially and injuriously affected by the commission's action. The plaintiffs respond that the trial court correctly concluded that they were aggrieved because Handsome did not lose record title to the property pursuant to an action of strict foreclosure and the Cascellas were personally and injuriously affected by the commission's action. We agree with the commission.

The following additional facts are relevant to our resolution of this claim. Handsome acquired title to 125 Garder Road by way of a quitclaim deed recorded on November 13, 2001, in the town land records. The instrument was signed by Todd Cascella, the grantor.

On December 20, 2005, MD Drilling & Blasting, Inc. (MD Drilling), filed a mechanic's lien on the property that also was recorded in the town land records. On February 26, 2006, it filed a notice of lis pendens in the land records in connection with the mechanic's lien. In March, 2006, MD Drilling brought an action against Cascella & Son Construction, Inc. (Cascella & Son), and Handsome, seeking to foreclose on the mechanic's lien. On December 29, 2009, the trial court rendered a judgment of strict foreclosure in favor of MD Drilling and set March 2, 2010, as the law day. The debt amount was determined to be $27,271.55. Thereafter, the court granted Cascella & Son's motion for an extension of time to postpone commencement of the law days and set a new law day for June 29, 2010.

After the initial law day had passed but before expiration of the new law day, MD Drilling executed a written agreement on April 13, 2010, with Todd Cascella, acting on behalf of Cascella & Son and Handsome. The agreement provided that MD Drilling would allow Cascella & Son and Handsome to retain possession of the property if Cascella & Son paid "the entire amount of the [debt owed] in monthly installments . . . commencing on March 16, 2010," until the judgment was paid in full, but that Cascella & Son's "failure to issue any payment, when due, [would] be considered a default of [the] [a]greement" and entitle MD Drilling "to possession of the property and . . . to take any action it deems necessary to collect the remaining balance of the [debt] . . . ." In return, MD Drilling agreed that it would not file a judgment of possession or an order of ejectment prior to June 30, 2010, and would request a law day extension until July 29, 2010, if Cascella & Son made timely payments through June 16, 2010. MD Drilling also agreed to continue requesting such extensions for as long as Cascella & Son was not in default of the agreement. Finally, the agreement provided that the judgment of strict foreclosure would be "null and void when the . . . debt [was] satisfied."

Todd Cascella subsequently testified at trial that the required monthly payments were being made and that Cascella & Son was not in default of the agreement. The law day was never again postponed, however, and it passed without redemption of the property by Handsome.[3] MD Drilling did not record a certificate of foreclosure in the town land records, did not file a satisfaction of judgment, and did not move to open the judgment after the law days had passed.

In its memorandum of decision, the trial court first observed that "[t]he owner of the property which forms the subject matter of an action before a land use agency is aggrieved by an adverse decision of the agency." The court then concluded that Handsome was aggrieved and had standing to appeal from the commission's decision because legal title to real property is not required to satisfy the test for aggrievement. Rather, the court reasoned that title for this purpose "is controlled by [the] deeds recorded on the land records." Thus, because the judgment of strict foreclosure against Handsome never had been recorded in the town land records, Handsome remained the record owner of 125 Garder Road and had standing to appeal. The court added that "[t]he fact that an agreement . . . provides for a mechanism for satisfying the judgment of strict foreclosure, solidifies and enhances Handsome's interest in the property" and that "[t]he judgment of strict foreclosure [rendered] in favor of MD Drilling . . . [was] not sufficient to deny aggrieved status to Handsome . . . ." In support of its conclusion that Handsome's status as the record owner of the property, rather than the holder

of legal title, was sufficient to establish aggrievement, the court cited several cases in which legal title was deemed unnecessary to satisfy the test for aggrievement. The court next considered the status of the Cascellas and concluded that they also had standing to appeal on grounds of statutory aggrievement because their personal and legal interests in the property had been specially and injuriously affected by the commission's action.

We begin with the applicable legal principles and the standard of review. "Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he [or she] has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. . . . When standing is put in issue, the question is whether the person whose standing is challenged is a proper party to request an adjudication of the issue . . . . Standing requires no more than a colorable claim of injury; a [party] ordinarily establishes . . . standing by allegations of injury. Similarly, standing exists to attempt to vindicate arguably protected interests. . . .

"Standing is established by showing that the party claiming it is authorized by statute to bring an action, in other words, statutorily aggrieved, or is classically aggrieved. . . . [Statutory] [s]tanding concerns the question [of] whether the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question.[4] . . .

"The fundamental test for determining [classical] aggrievement encompasses a well-settled twofold determination: [F]irst, the party claiming aggrievement must successfully demonstrate a specific, personal and legal interest in [the challenged action], as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the [challenged action]. . . . Aggrievement is established if there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected. . . .

"[I]f the injuries claimed by the plaintiff are remote, indirect or derivative with respect to the defendant's conduct, the plaintiff is not the proper party to assert them and lacks standing to do so. [When], for example, the harms asserted to have been suffered directly by a plaintiff are in reality derivative of injuries to a third party, the injuries are not direct but are indirect, and the plaintiff has no standing to assert them." (Citations omitted; footnote added; internal quotation marks omitted.) *Cambodian Buddhist Society of Connecticut, Inc.*

v. *Planning & Zoning Commission*, 285 Conn. 381, 393–95, 941 A.2d 868 (2008) (*Cambodian Buddhist Society*).

"Mindful that it is a fundamental concept of judicial administration that no person is entitled to set the machinery of the courts in operation except to obtain redress for an injury he has suffered or to prevent an injury he may suffer, either in an individual or a representative capacity . . . [a plaintiff is] required to plead and prove some injury in accordance with our rule on aggrievement. . . . Accordingly, [i]t [is] the function of the trial court to determine . . . first, whether the [plaintiff's] allegations if they should be proved would constitute aggrievement as a matter of law, and second, if as a matter of law they would constitute aggrievement, then whether [the plaintiff] proved the truth of [the] allegations. . . . Although the question of whether a party is aggrieved presents a question of fact in cases involving disputed facts . . . the question of whether the pleadings set forth sufficient facts, if presumed true, to establish a party's aggrievement presents a question of law over which we exercise plenary review." (Citations omitted; internal quotation marks omitted.) *Connecticut Independent Utility Workers, Local 12924* v. *Dept. of Public Utility Control*, 312 Conn. 265, 272–73, 92 A.3d 247 (2014).

## A

The commission claims that Handsome was not aggrieved because it lost title to the property due to the passing of the law days in the strict foreclosure action and the absence of a recorded foreclosure certificate does not void the passing of title through the judicial foreclosure decree. We agree.

It is well established that a party may be aggrieved for purposes of appeal by virtue of its status as a property owner. *Moutinho* v. *Planning & Zoning Commission*, 278 Conn. 660, 671, 899 A.2d 26 (2006) (owner of property at issue in zoning appeal always is aggrieved); see also *Bossert Corp.* v. *Norwalk*, 157 Conn. 279, 285, 253 A.2d 39 (1968) ("[a]s the owner of the tract in issue, the plaintiff was certainly aggrieved by the action of the common council"). "[I]n order to retain standing as an aggrieved person, [however] a party must have and must maintain a specific, personal and legal interest in the subject matter of the appeal throughout the course of the appeal. . . . It is not enough for a party to have an interest in the property sufficient to establish aggrievement only at the time of the application to the commission." (Citations omitted.) *Primerica* v. *Planning & Zoning Commission*, 211 Conn. 85, 94, 558 A.2d 646 (1989). Accordingly, because 125 Garder Road was subject to a strict foreclosure action prior to the granting of the permit extension, we must examine the law of strict foreclosure to determine the effect of the foreclosure action on Handsome's ownership interest at

the time it sought the permit extension and during its subsequent appeal from the commission's decision.

This court has stated that, "[i]n all essential respects the attributes of foreclosure of mortgages apply to [mechanic's] liens." *City Lumber Co. of Bridgeport, Inc.* v. *Murphy*, 120 Conn. 16, 19, 179 A. 339 (1935). Thus, to the extent the foreclosure of mortgages and mechanic's liens involve similar procedural steps, the law established in mortgage foreclosure actions also applies to mechanic's liens.

Connecticut courts have long recognized that, when "a foreclosure decree has become absolute by the passing of the law days, the outstanding rights of redemption have been cut off and the title has become unconditional in the [lienor] . . . . The [property owner] has no remaining title or interest . . . ." (Citations omitted.) Id., 25; see also *First Bank* v. *Simpson*, 199 Conn. 368, 372, 507 A.2d 997 (1986) ("[t]he judgment of strict foreclosure clearly vested absolute title in the foreclosing [party] and extinguished any interest of the [owner] in the foreclosed property"); *JP Morgan Chase Bank* v. *Gianopoulos*, 131 Conn. App. 15, 21–22, 30 A.3d 697 (under law of strict foreclosure, "[t]he effect of the passing of the law day is that . . . title to the property becomes unconditional in the encumbrancer"), cert. denied, 302 Conn. 947, 30 A.3d 2 (2011); *Barclays Bank of New York* v. *Ivler*, 20 Conn. App. 163, 166, 565 A.2d 252 (same), cert. denied, 213 Conn. 809, 568 A.2d 792 (1989).

This principle also has been recognized in Connecticut's foreclosure statutes. General Statutes § 49-16, which pertains to foreclosure certificates, provides in relevant part that, "[w]hen . . . the time . . . for redemption has passed, *and the title to the mortgaged premises has become absolute in the* [*lienor*] . . . he shall . . . make and sign a certificate . . . [that] shall be recorded in the records of the town . . . ." (Emphasis added.) In short, "title . . . become[s] absolute in the [lienor] . . . the day after all of the law days have passed without anyone redeeming." 1 D. Caron & G. Milne, Connecticut Foreclosures: An Attorney's Manual of Practice and Procedure (5th Ed. 2011) c. 6-3, pp. 336–37.

In the present case, the trial court rendered a judgment of strict foreclosure in favor of MD Drilling on December 29, 2009, and set March 2, 2010, as the law day. The court subsequently granted Cascella & Son's motion for an extension of time to postpone commencement of the law days and set a new law day for June 29, 2010, which appears to have passed without redemption. There is no evidence in the record that Cascella & Son, Handsome or MD Drilling filed a motion to open the judgment within the appeal period in order to modify its terms. See General Statutes § 49-15.[5] Accordingly, lacking evidence to the contrary, we are compelled to conclude that Handsome lost title to the property on

June 30, 2010, more than ten months before the commission granted the permit extension.

In *Southbury* v. *American Builders, Inc.*, 162 Conn. 633, 295 A.2d 566 (1972), in which the defendants conceded that they had no interest in the property in question because of a foreclosure subsequent to the commencement of the appeal, we recognized that, "[a]lthough a party may have had an appealable interest in a controversy, if, after judgment, his interest is either conveyed or transferred absolutely or terminated by operation of law, his right to appeal is lost, since he no longer has any interest in the litigation and is not injured by the result of the action." Id., 634. In the present case, apparently unbeknownst to the commission, Handsome lost title to the property before the permit extension proceedings because it had failed to pay its debt to the lienor, to obtain an extension of the law day, or to file a motion to open and modify the judgment in order to avoid this consequence. Accordingly, we conclude that Handsome had no standing to bring the appeal because, having lost title to the property, it was not aggrieved by the commission's decision to impose conditions in connection with the permit extension.[6]

The plaintiffs argue that this court should not "import the intricacies of foreclosure law into the zoning law analysis of whether Handsome is . . . aggrieved" but, rather, should rely on decisions such as *Paupack Development Corp.* v. *Conservation Commission*, 229 Conn. 247, 640 A.2d 70 (1994), and *Purtill* v. *Town Plan & Zoning Commission*, 146 Conn. 570, 153 A.2d 441 (1959), in which Connecticut courts have looked to the owner of record for purposes of determining aggrievement. The plaintiffs, however, cite no authority in support of their claim that foreclosure law does not apply, and, therefore, *Paupack Development Corp.* and *Purtill* are inapposite because neither case involved a judgment of strict foreclosure or addressed the effect of such a judgment on the ability of a plaintiff, who has lost title to the property but remains the owner of record, to maintain an appeal.

Furthermore, there is no legal authority, and the plaintiffs have cited none, for the proposition that title acquired by way of a strict foreclosure proceeding is not absolute until a certificate of foreclosure is recorded in the land records. Rather, the opposite is the case. In *Ghent* v. *Meadowhaven Condominium, Inc.*, 77 Conn. App. 276, 823 A.2d 355 (2003), the Appellate Court stated that "[t]he certificate of judgment of strict foreclosure [is] not the [muniment] of title." (Internal quotation marks omitted.) Id., 288, quoting Connecticut Bar Association, Connecticut Standards of Title (1999) standard 19.7 (c) (Connecticut Standards of Title); see also Connecticut Standards of Title, supra, standard 19.2 ("A statutory certificate of foreclosure is not a muniment of title. It merely serves as public notice that a particular

mortgage or lien has been foreclosed. It acts as a pointer for title searchers directing them to the particular court action which foreclosed the mortgage or lien. Thus, any inaccuracies or omissions in such recorded certificate, regardless of their nature, will not affect the marketability of title."). It is "the foreclosure action [that] changes the [encumbrance] from a conditional conveyance to an absolute one and the certificate only evidences the judicial process by which this has occurred." 2 D. Caron & G. Milne, supra, c. 21-3, p. 89; see also Connecticut Standards of Title, supra, standard 19.2, comment (1) ("the foreclosure decree is a muniment of title and not the certificate of foreclosure"). This conclusion is further substantiated by § 49-16, which, as previously noted, provides that only *after* the time for redemption has passed and "*the title to the mortgaged premises has become absolute in the* [*lienor*]" shall the lienor "make and sign a certificate . . . [that] shall be recorded in the records of the town . . . ." (Emphasis added.) We also note that, in the present case, the notice of lis pendens that MD Drilling filed in the land records in connection with the mechanic's lien indicated that title had been challenged and might no longer be held by Handsome.

The plaintiffs finally argue that Handsome is classically aggrieved because it has a specific personal and legal interest in seeking a judicial determination regarding the validity of the new conditions imposed in connection with the permit extension, which serve to prevent Handsome from completing the project. The conditions to which the plaintiffs refer are the new expiration date, approximately two years from the date the permit extension was granted, and the posting of what they describe as an "extremely large bond" in the amount of $100,000. (Internal quotation marks omitted.) We need not address this claim, however, in light of our previous conclusion that Handsome had no ownership interest in the property.[7]

B

The commission next contends that the Cascellas lacked standing to assert claims that are derivative of Handsome and, therefore, that the trial court improperly concluded that they were aggrieved. The plaintiffs respond that the Cascellas were aggrieved because they were not only officers of Handsome, but were personal guarantors of the mortgage on 125 Garder Road and had cosigned loans for equipment on the site, both of which were foreclosed. They also argue that they were beneficiaries of the judgment ordering the commission to approve the permit extension and were sued personally by the town and the town zoning enforcement officer for allegedly violating the new permit conditions during the present appeal. We agree with the commission.

As previously noted, the trial court concluded that

the Cascellas were statutorily aggrieved because their personal and legal interests had been specially and injuriously affected by the commission's action. The court explained that, "[a]lthough the mere status of a corporate or limited liability company shareholder or officer would not, in and of itself, satisfy the test for classical aggrievement," the Cascellas had "provided sufficient proof of aggrievement" because, "in addition to being officers of [Handsome], [they] derive[d] considerable income from [Handsome] and [were] involved in all management decisions." In reaching this conclusion, the trial court relied on *DiBonaventura* v. *Zoning Board of Appeals*, 24 Conn. App. 369, 370–71, 376–77, 588 A.2d 244 (agreement between property owner and property owner's son allowing son to use property for car dealership created sufficient interest in property to allow son to appeal from zoning decision affecting property), cert. denied, 219 Conn. 903, 593 A.2d 129 (1991), and distinguished the present case from *Cambodian Buddhist Society of Connecticut, Inc.* v. *Planning & Zoning Commission*, supra, 285 Conn. 393 (plaintiff not statutorily aggrieved by planning and zoning commission's denial of application for special exception because he "did not own the property" that was subject of application and "did not own land abutting or within 100 feet of the property").

We first note that, to the extent the trial court indicated that the Cascellas were statutorily aggrieved, no evidence was presented at trial that they satisfied a principal requirement of statutory aggrievement in Connecticut, namely, the ownership of land abutting or within 100 feet of any portion of the land involved in the decision of the board or commission. See footnote 4 of this opinion. Accordingly, we consider only whether the Cascellas were classically aggrieved.

We agree with the commission that the facts in the present case are similar to the facts in *Cambodian Buddhist Society* and that its reasoning applies here. In that case, we determined that the president of a religious society did not have standing to appeal from the planning and zoning commission's denial of the society's application for a special exception to build a Buddhist temple on its property because the alleged injury was "entirely derivative of the society's claim as the owner of the property. The interest in building a temple on the property is essentially a property interest. Although the [planning and zoning] commission's decision might have ramifications for the individual members of the society and the circumstances under which they practice their religion, the right to build the temple could not be asserted independently by an individual member. If the society chose not to appeal from the [planning and zoning] commission's denial of the society's application for a special exception, then any independent challenge . . . would be subject to dismissal as moot. . . . It is clear, therefore, that, because any

injuries that [the president] suffered as a result of the [planning and zoning] commission's decision are in reality derivative of injuries to [the society], the injuries are not direct but are indirect, and [he] has no standing to assert them." (Footnote omitted; internal quotation marks omitted.) *Cambodian Buddhist Society of Connecticut, Inc.* v. *Planning & Zoning Commission*, supra, 285 Conn. 396. The court thus concluded that the president of the society was neither classically nor statutorily aggrieved. Id., 397–98; see also *Ganim* v. *Smith & Wesson Corp.*, 258 Conn. 313, 347–48, 780 A.2d 98 (2001) ("[I]f the injuries claimed by the plaintiff are remote, indirect or derivative with respect to the defendant's conduct, the plaintiff is not the proper party to assert them and lacks standing to do so. Where, for example, the harms asserted to have been suffered directly by a plaintiff are in reality derivative of injuries to a third party, the injuries are not direct but are indirect, and the plaintiff has no standing to assert them.").

In the present case, the trial court recognized our decision in *Cambodian Buddhist Society* but distinguished the Cascellas' positions as officers of Handsome from the officer and members of the religious society on the ground that the Cascellas "derive considerable income from [Handsome] and are involved in all management decisions." We do not agree with this distinction because the lack of a temple in which to worship occupied just as integral and important a place in the daily lives of the officer and members of the religious society as the Cascellas' income and management responsibilities occupied in their own daily lives. Indeed, we specifically referred to testimony in *Cambodian Buddhist Society* that "the society . . . had no temple in the state of Connecticut at which its members could worship . . . the society had purchased the property [at issue] because [it] possessed the appropriate qualities for a temple . . . the society . . . had been required to hold religious services in a rented space . . . it [was] essential to Cambodian Buddhism that monks live in the temple and that the practitioners be able to visit the temple where the monks live . . . [it was] important that the temple be located in a tranquil environment where the practitioners can enter into a meditative state . . . the older generation of Cambodian Buddhists [was] dying without being able to introduce the youngest generation to the religion, and if much more time passe[d] before the society [was] able to build a temple, there might be no need for one." *Cambodian Buddhist Society of Connecticut, Inc.* v. *Planning & Zoning Commission*, supra, 285 Conn. 389–90.

Moreover, the trial court in the present case overlooked the dispositive legal factor in *Cambodian Buddhist Society*, which was that the interest in question was a property interest, and, therefore, "the right to build the temple could not be asserted independently

by an individual [society officer or] member." Id., 396. In the present case, as well, the interest in question is a property interest that cannot be asserted by the Cascellas because they are not the owners of the property.

The plaintiffs argue that the court should be guided by *Loew* v. *Falsey*, 144 Conn. 67, 127 A.2d 67 (1956), in which we held that the plaintiff, the sole owner of stock in two corporations over which he exercised control, had standing to bring a mandamus action to compel the issuance of a building permit, even though the corporation was the owner of the property, because he "was the beneficial owner" or "equitable owner . . . ." Id., 74. We explained in *Loew*: "There is no reason why a permit for the proposed construction could not have been granted either to [the plaintiff] or to [the corporation]. In short, there is no jurisdictional defect by reason of the incorrect name of the [plaintiff rather than the corporation on the permit application]. Under the circumstances, the application as completed complied substantially with the code requirements. This is all that the law demands. . . . While the corporation may have held the legal title to the premises, [the plaintiff] owned and controlled the corporation. He was the beneficial owner. By analogy, an equitable owner may properly apply for a variance under zoning regulations. . . . Unless it appears otherwise, the equitable owner may be deemed agent for the holder of the legal title. . . . The trial court did not err in rendering judgment directing the issuance of the permit." (Citations omitted.) Id., 73–74.

We disagree that *Loew* applies in the present case because the conclusion in *Loew* that the plaintiff was the "beneficial" or "equitable" owner of the property was based on the fact that the corporation held legal title to the property throughout the proceeding. In this case, Handsome lost title to the property by way of the strict foreclosure judgment prior to the granting of the permit extension and the subsequent appeal, and, therefore, the Cascellas do not have the same relationship to the current title holder, MD Drilling, that the plaintiff had with the corporate title holder in *Loew*. Moreover, *Loew* did not involve the effect of a foreclosure action on a party's aggrievement and standing to bring a zoning appeal, which is controlled by the statutory requirement of aggrievement. Accordingly, *Loew* is distinguishable from the present case on both factual and legal grounds.

Insofar as the trial court relied on *DiBonaventura* v. *Zoning Board of Appeals*, supra, 24 Conn. App. 376–77, in which the Appellate Court concluded that an agreement between the property owner and his son permitting the son to use the property for a car dealership created in the son a sufficient property interest to allow the son's appeal from a zoning decision that affected the property, we acknowledged *DiBonaven-*

*tura* and other similar cases in *Cambodian Buddhist Society* but rejected them as inapplicable. *Cambodian Buddhist Society of Connecticut, Inc.* v. *Planning & Zoning Commission*, supra, 285 Conn. 398 n.9; see, e.g., *Moutinho* v. *Planning & Zoning Commission*, supra, 278 Conn. 669–70 (developer that had oral agreement with landowner to enter into long-term lease had sufficient interest in property to appeal from zoning decision affecting property); *Primerica* v. *Planning & Zoning Commission*, supra, 211 Conn. 94–95 (lessee has sufficient interest in property to appeal from zoning decision affecting property). We explained that "cases in which this court and the Appellate Court have concluded that nonowners of property can have a sufficient interest in the property to have standing to appeal from a zoning decision affecting the property . . . are distinguishable . . . because they involved long-term agreements between the landowner and the nonlandowner concerning the nonlandowner's commercial use of the property that arguably gave rise to a property interest." (Citations omitted.) *Cambodian Buddhist Society of Connecticut, Inc.* v. *Planning & Zoning Commission*, supra, 398 n.9.

In the present case, the Cascellas occupy a very different position than that of the plaintiffs in the foregoing cases. As corporate officers, they never represented themselves as individual partners with Handsome in connection with the development of the property. In addition, all communications from local authorities were directed to Handsome, and the Cascellas acted in their capacities as corporate officers in representing the interests of Handsome, not as independent individuals representing their own distinct interests. Thus, there could never be an agreement between the Cascellas and Handsome with respect to development of the property, as in the foregoing cases, because the Cascellas are *part of* Handsome. We determined in *Cambodian Buddhist Society* that, "because any injuries that [the president] suffered as a result of the [planning and zoning] commission's decision [were] in reality *derivative* of injuries to [the society], the injuries [were] not direct but [were] indirect, and [he had] no standing to assert them." (Emphasis added; internal quotation marks omitted.) Id., 396. In the present case, as well, we conclude that the Cascellas demonstrated no direct injury or aggrievement, and, therefore, the trial court improperly concluded that they had standing to appeal.[8]

The judgment is vacated and the case is remanded with direction to dismiss the appeal for lack of jurisdiction.

In this opinion ROGERS, C. J., and EVELEIGH, ESPINOSA, ROBINSON and VERTEFEUILLE, Js., concurred.

[1] Todd Cascella is the president and Mona Cascella is the secretary of Handsome, and we refer to them as the Cascellas. We refer to Handsome and the Cascellas collectively as the plaintiffs.

[2] At the same time, the plaintiffs filed a complaint with the FOIC, in which they alleged that the May 5, 2011 executive session violated the Freedom of Information Act. The FOIC agreed, but the commission's appeal from the FOIC's ruling was sustained. Both the plaintiffs and the commission appealed, and this court concluded that the commission had violated the act by convening the executive session. See *Planning & Zoning Commission* v. *Freedom of Information Commission*, 316 Conn. 1, 4, 8, 110 A.3d 419 (2015).

[3] Although Handsome filed motions on June 22, 2010, and July 22, 2010, "with the consent of . . . MD Drilling . . . and pursuant to a settlement agreement between the . . . parties" to further postpone the law day until July 27, 2010, and September 28, 2010, respectively, it appears from the record of the foreclosure proceeding that the trial court took no action on either motion.

[4] General Statutes § 8-8 (a) provides in relevant part: "(1) 'Aggrieved person' means a person aggrieved by a decision of a board and includes any officer, department, board or bureau of the municipality charged with enforcement of any order, requirement or decision of the board. In the case of a decision by a zoning commission, planning commission, combined planning and zoning commission or zoning board of appeals, 'aggrieved person' includes any person owning land in this state that abuts or is within a radius of one hundred feet of any portion of the land involved in the decision of the board. . . ."

Although § 8-8 (a) was amended in 2012; see Public Acts 2012, No. 12-146, § 1; that amendment has no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of the statute.

[5] General Statutes § 49-15 provides in relevant part: "(a) (1) Any judgment foreclosing the title to real estate by strict foreclosure may, at the discretion of the court rendering the judgment, upon the written motion of any person having an interest in the judgment and for cause shown, be opened and modified, notwithstanding the limitation imposed by section 52-212a, upon such terms as to costs as the court deems reasonable, provided no such judgment shall be opened after the title has become absolute in any encumbrancer except as provided in subdivision (2) of this subsection.

"(2) Any judgment foreclosing the title to real estate by strict foreclosure may be opened after title has become absolute in any encumbrancer upon agreement of each party to the foreclosure action who filed an appearance in the action and any person who acquired an interest in the real estate after title became absolute in any encumbrancer, provided (A) such judgment may not be opened more than four months after the date such judgment was entered or more than thirty days after title became absolute in any encumbrancer, whichever is later, and (B) the rights and interests of each party, regardless of whether the party filed an appearance in the action, and any person who acquired an interest in the real estate after title became absolute in any encumbrancer, are restored to the status that existed on the date the judgment was entered. . . ."

[6] We reject the plaintiffs' argument that *Southbury* is distinguishable from the present case because it involved an enforcement action that challenged the standing of the defendant rather than an administrative appeal that challenged the standing of the plaintiff. In both cases, the owner lost title to the subject property as the result of a foreclosure, and, therefore, the general principle articulated in *Southbury* that the right to appeal is lost when an interest is terminated by operation of law also is applicable in the present case.

[7] We disagree with the dissenting justice's claim that we improperly decline to address "the import of Handsome's agreement with MD Drilling" because Handsome relied on the agreement in support of its claim of aggrievement throughout the proceedings and the trial court relied on the agreement in concluding that Handsome's interest in the property was sufficient to establish aggrievement.

An objective examination of the record demonstrates that the plaintiffs did not rely on the agreement as evidence of a possessory interest in the property in support of their claim of aggrievement throughout the proceedings. In their complaint, the plaintiffs alleged aggrievement on the basis of their ownership interest in the property. The first and only time the plaintiffs clearly argued aggrievement on the basis of a possessory interest in the property was in their objection to the commission's motion to dismiss. In response to the commission's direct attack on the plaintiffs' allegation that Handsome was aggrieved as the owner of the property, the plaintiffs argued that an ownership interest was not required to prove aggrievement and that Handsome retained a possessory interest under its agreement with MD

Drilling that was sufficient to establish aggrievement. The plaintiffs' counsel, however, did not make that argument at trial. Rather, the plaintiffs' attorney elicited testimony from Todd Cascella that Handsome was the owner of the property, that Handsome's ownership interest was established by a recorded deed, which was entered into evidence as the plaintiffs' first exhibit, and that Handsome remained the owner of the property as of the date of Todd Cascella's testimony. Similarly, in his one and only argument to the court on the issue of aggrievement at trial, the plaintiffs' counsel contended: "[W]hat's important is the record owner, and the evidence today is [that Handsome] is the record owner. Lots of times there are liens or there [is] a lis pendens filed on the land records, [and] anybody going to [the] land records to determine who the record owner is in this particular case would conclude that [Handsome] is still . . . the record owner." Thus, although there was testimony and discussion between the court and the parties' attorneys regarding the written agreement in the context of the foreclosure action, including the fact that Handsome continued to do business on the property and that the judgment of strict foreclosure, together with the agreement, might create in Handsome a possible license or security interest in the property, the plaintiffs' counsel did not argue at trial that Handsome was aggrieved on the basis of a possessory interest in the property. The plaintiffs also did not make that argument in their posttrial brief, and they never sought to amend their complaint to allege a possessory interest as an alternative ground for aggrievement. As previously discussed, a plaintiff is required to specifically plead and prove aggrievement, and it is the function of a reviewing court to determine "whether the pleadings set forth sufficient facts, if presumed true, to establish a party's aggrievement . . . ." (Internal quotation marks omitted.) *Connecticut Independent Utility Workers*, *Local 12924* v. *Dept. of Public Utility Control*, supra, 312 Conn. 273. Accordingly, because the plaintiffs never claimed a possessory interest in the property in their original complaint, never amended their pleadings to add such a claim, and never argued at trial that they had a possessory interest in the property, the dissenting justice's assertion that the plaintiffs relied on a possessory or equitable interest in the property throughout the proceedings as the basis for their claim that Handsome was aggrieved is simply not true.

Additionally, the plaintiffs failed to properly make this argument in their appellate brief. On appeal, the plaintiffs argue that Handsome was aggrieved as the record owner of the property and that "the courts have looked to the owner of record for purposes of determining who is aggrieved." In developing this argument, the plaintiffs attack the commission's reliance on *Southbury* for the principle that "an owner whose property is foreclosed lacks standing to prosecute a zoning appeal." The plaintiffs argue that *Southbury* is distinguishable from the present case because, unlike in *Southbury*, (1) the present case is an administrative appeal, (2) the present case involves the standing of the plaintiffs rather than that of the defendant, (3) the certificate of foreclosure in the present case has never been recorded, (4) Handsome is still in possession of the premises, (5) Handsome retains an equitable interest in the premises as a result of the agreement with MD Drilling to void the foreclosure upon satisfaction of their payment arrangement, and (6) Handsome would benefit from a judgment in its favor. The plaintiffs' reference to the fact that Handsome is still in possession of, and retains an equitable interest in, the property, however, does not represent an independent claim that Handsome is aggrieved on the basis of a possessory or equitable interest in the property. It is a statement of fact used to distinguish *Southbury* from the present case. The reference is contained in a mere three lines of the plaintiffs' appellate brief and is unaccompanied by any supporting analysis or citation to relevant legal authority. It is well established that "[w]e are not obligated to consider issues that are not adequately briefed." (Internal quotation marks omitted.) *Connecticut Coalition Against Millstone* v. *Connecticut Siting Council*, 286 Conn. 57, 87, 942 A.2d 345 (2008). Issues are deemed inadequately briefed "when they are merely mentioned and not briefed beyond a bare assertion . . . [and] when they . . . consist of conclusory assertions . . . with no mention of relevant authority and minimal or no citations from the record . . . ." (Citations omitted; internal quotation marks omitted.) *Electrical Contractors*, *Inc.* v. *Dept. of Education*, 303 Conn. 402, 444 n.40, 35 A.3d 188 (2012). Accordingly, even if the plaintiffs intended to raise such a claim, they did not adequately brief it.

We also disagree with the dissenting justice insofar as he asserts that the trial court relied on the agreement with MD Drilling in concluding that Handsome's interest in the property was sufficient to establish aggrievement.

The trial court concluded that Handsome was aggrieved because it was the record owner of the property, and only then noted that the agreement with MD Drilling "*solidifie*[*d*] and *enhance*[*d*] Handsome's [ownership] interest in the property." (Emphasis added.) The court thus found that Handsome had an ownership interest in the property apart from the agreement with MD Drilling and that the agreement merely reinforced this interest.

To the extent the court cited *Moutinho* v. *Planning & Zoning Commission*, 278 Conn. 660, 669, 899 A.2d 26 (2006), *Shapero* v. *Zoning Board*, 192 Conn. 367, 376, 472 A.2d 345 (1984), *Antenucci* v. *Hartford Roman Catholic Diocesan Corp.*, 142 Conn. 349, 355, 114 A.2d 216 (1955), *Goodridge* v. *Zoning Board of Appeals*, 58 Conn. App. 760, 767, 755 A.2d 329, cert. denied, 254 Conn. 930, 761 A.2d 753 (2000), and *Michel* v. *Planning & Zoning Commission*, 28 Conn. App. 314, 324–25, 612 A.2d 778, cert. denied, 223 Conn. 923, 614 A.2d 824 (1992), for the proposition that "[l]egal title to property is not required in order to satisfy the test for aggrievement," it did so for the purpose of agreeing with the plaintiffs' argument that Handsome's status as the record owner of the property was sufficient to establish aggrievement, and not for the purpose of showing that Handsome had a possessory or equitable interest in the property. Only a few lines before the trial court cited the foregoing cases, it referred to the commission's argument that "the entry of a judgment of strict foreclosure, even if unrecorded, vests title in the foreclosing party, and that [Handsome] ha[d] no standing to prosecute this appeal" before concluding that "[t]his claim is not well taken." The trial court explained that Handsome was the record owner of the property, that "[t]itle to real estate is controlled by [the] deeds recorded on the land records" and that "[l]egal title to property is not required in order for a party to satisfy the test for aggrievement." It then cited the foregoing cases in support of its conclusion that legal title is not required. The trial court made no reference at any point in its decision to an argument by the plaintiffs that Handsome was aggrieved because of an independent possessory or equitable interest in the property. In sum, the trial court's reference to the agreement with MD Drilling and to the foregoing cases provides no support for the dissenting justice's view that the court determined that Handsome was aggrieved on the wholly independent ground that it had a possessory or equitable interest in the property. Accordingly, there is no basis in the trial court's decision for appellate review of such a claim.

[8] In light of our conclusions that Handsome and the Cascellas lack standing, we need not reach the other issues raised in this appeal.